(No. 81877.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. KEVIN L. CURRY, Appellant.

*Opinion filed September 18, 1997.—Rehearing denied December 1, 1997.*

510

Daniel D. Yuhas, Deputy Defender, and Elizabeth D. Caddick, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield, and Michael L. Atterberry, State's Attorney, of Petersburg (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson, William L. Browers and Catherine F.

Glenn, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE McMORROW delivered the opinion of the court:

The defendant, Kevin L. Curry, was charged by information with one count of residential burglary (720 ILCS 5/19—3 (West 1992)) and two counts of criminal sexual assault (720 ILCS 5/12—13(a)(2) (West 1992)). During plea negotiations prior to trial, the State offered to dismiss the count of residential burglary and one of the two counts of criminal sexual assault if defendant agreed to plead guilty to the remaining count of criminal sexual assault and accept the State's recommendation that he receive a sentence of $4^1/2$ years' imprisonment. Defendant rejected the plea offer and was subsequently convicted by a jury of the crimes alleged in all three counts. The trial judge, relying on section 5—8—4(a) of the Unified Code of Corrections (Code) (730 ILCS 5/5—8—4(a) (West 1992)), sentenced defendant to three consecutive terms of four years' imprisonment. The appellate court affirmed defendant's convictions and sentences. No. 4—95—0531 (unpublished order under Supreme Court Rule 23). We granted defendant's petition for leave to appeal. 155 Ill. 2d R. 315.

Two issues are presented for our review: whether defendant was denied his right to effective assistance of counsel during plea negotiations with the State when his counsel failed to advise him that he would receive mandatory consecutive sentences under section 5—8—4(a) of the Code if convicted of more than one of the counts with which he was charged; and whether, irrespective of defense counsel's degree of effectiveness, the trial court erred in imposing consecutive sentences for defendant's convictions.

## Background

Defendant's convictions stem from the sexual as-

sault of his next-door neighbor, M.W. At trial, M.W. testified that she went to bed in her home at approximately 1:45 a.m. on April 30, 1994. Sometime thereafter, she felt someone touch her shoulders, chest, stomach and legs. The sensation was not strong enough, however, to awaken her. Instead, "[i]t was like a dream. [She] felt feather touches. It wasn't enough touches to make [her] think reality."

M.W. felt her assailant sexually assault her. She then felt the assailant begin to engage in sexual intercourse. Throughout this time, M.W. believed that she was dreaming. While the assailant was on top of her, M.W. heard him ask her if she "wanted to know who this was" or if she "even knew who this was." The assailant then said that he was Kevin Curry. As these statements were made, M.W. woke up.

When she awoke, M.W. jumped out of bed and retreated to a corner of the bedroom. M.W. was crying and terrified. She told defendant that if he did not leave immediately, she would tell his brother (with whom defendant lived) what he had done. After defendant left, M.W. dressed herself and ran to a neighbor's house where the police were summoned. They arrived a short time later. After speaking to the police, M.W. went to the hospital and was examined. M.W. suffered no physical injuries and was not admitted to the hospital.

M.W. further testified that she knew who defendant was prior to April 30, 1994, because defendant was a friend of her former husband and a brother of her next-door neighbor. However, M.W. had never had a sustained, one-on-one conversation with defendant, whom she considered to be an acquaintance rather than a friend. M.W. stated that she never gave defendant permission to enter her house on April 30, 1994, and never consented to his touching of her body.

Defendant testified that in April of 1994 he was liv-

ing in his brother's home, located next door to M.W.'s home. Defendant knew M.W. because he was a close friend of her former husband. Defendant had spoken to M.W. quite often and considered her to be a good friend.

Defendant stated that he spent the night of April 29, 1994, at his brother's home, drinking beer with friends and playing cards. Around midnight, defendant left to visit other friends. Approximately two hours later, defendant returned to his brother's house. He then sat on the porch by himself and drank beer. Defendant testified that during the night of April 29, 1994, and early morning of April 30, 1994, he consumed at least 15 beers.

Defendant explained that he soon grew tired of sitting on the porch by himself. He decided to go to M.W.'s house to see if she "wanted to get up and have a beer and talk." Defendant went to the house and knocked on the front door three times. No one answered. Defendant opened the unlocked door and called for M.W. When M.W. did not respond, defendant went into the house and then into M.W.'s bedroom. Defendant sat down on the bed, grabbed M.W.'s arm and shook her, saying "[M.], wake up." M.W. awoke, sat up in bed and asked who was there. Defendant told her who he was. M.W. asked what time it was, turned on a lamp and looked at her clock.

According to defendant, the two conversed and then began to kiss. Defendant's belief at the time was that M.W. wanted to engage in sexual intercourse. Defendant testified that he committed the sexual acts described by M.W. in her testimony. Defendant stated that, as he began to engage in sexual intercourse, M.W. asked who he was. Defendant responded, "This is Kevin Curry from next door." M.W. then screamed. Defendant got off the bed and had no further physical contact with M.W. Defendant told her he was sorry and that he thought

she knew who he was. Defendant got dressed, went home and went to bed. He was awakened between 5 a.m. and 6 a.m. when the police arrived.

Defendant testified that he did not attempt to have sexual relations with M.W. against her will. To defendant, it appeared that M.W. was capable of agreeing to what happened between the two of them because she was awake and talking. Two police officers testified that on April 30, 1994, defendant gave statements to them which were consistent with his trial testimony.

Defendant was convicted of one count of residential burglary and two counts of criminal sexual assault. Both of these offenses are Class 1 felonies (see 720 ILCS 5/19—3(b), 12—13(b) (West 1992)) and have a statutory sentencing range of not less than 4 and not more than 15 years' imprisonment. 730 ILCS 5/5—8—1(a)(4) (West 1992). At defendant's sentencing hearing held on February 2, 1995, the State's Attorney recommended that defendant receive concurrent terms of eight years' imprisonment. The trial judge advised the State's Attorney that defendant's convictions for criminal sexual assault triggered the mandatory consecutive sentencing provision of section 5—8—4(a) of the Code and, therefore, that all three of defendant's sentences had to run consecutively. Both the State's Attorney and defense counsel indicated that they were unaware that consecutive sentences were mandatory for defendant's offenses. The trial judge reiterated that the law required consecutive sentences and, accordingly, sentenced defendant to three consecutive terms of four years' imprisonment, for a total term of imprisonment of 12 years.

Subsequently, on March 1, 1995, defendant filed a motion to reconsider his sentence. In the motion, defendant maintained that the trial judge erred in concluding that consecutive sentences were mandatory for his convictions. Defendant also asserted that he was denied

important sentencing information during plea negotiations with the State. According to defendant, prior to trial, the State offered to dismiss the residential burglary charge and one of the two counts of criminal sexual assault if he would agree to plead guilty to the remaining count of criminal sexual assault and accept the State's recommendation that he receive a sentence of $4^1/2$ years' imprisonment. Defendant asserted that he rejected this offer because his attorney mistakenly advised him that he would face only concurrent sentences of approximately four years' imprisonment if he were convicted of any of the three charges. In support of these latter assertions, defendant attached to the motion an affidavit from his trial attorney and a stipulation. In the affidavit, defense counsel confirmed that the State had made the plea offer. Counsel also stated that he had not informed defendant that he could receive consecutive sentences if convicted of the offenses with which he was charged. The stipulation attached to the motion to reconsider stated that if defendant were called to testify, he would testify that if he had known that consecutive sentences were mandatory, he would have accepted the State's plea offer.

Following a hearing held on July 3, 1995, the trial judge denied defendant's motion to reconsider his sentence. Although the trial judge expressed reluctance to sentence defendant to 12 years in prison, he adhered to his conclusion that consecutive sentences were mandatory for defendant's convictions under the law. The trial judge also concluded that it was irrelevant whether defendant was given accurate sentencing information during plea negotiations because defendant did not enter a guilty plea and because defendant had received all the rights to which he was entitled, including the right to a jury trial.

On appeal, defendant argued, *inter alia*, that he

received ineffective assistance of counsel during plea negotiations with the State, and that consecutive sentences were not mandatory for his offenses under section 5—8—4(a). The appellate court rejected defendant's claim of ineffective assistance of counsel for reasons other than those offered by the trial judge. According to the appellate court, the case law interpreting section 5—8—4(a) which existed at the time of defendant's plea negotiations precluded a finding that defense counsel's performance was deficient. The court also held that, based on its recent decision in *People v. Childs*, 278 Ill. App. 3d 65 (1996), consecutive sentences were mandatory for all three of defendant's convictions. This appeal followed.

## Analysis

Before this court, defendant repeats the principal arguments which he made in the appellate court. Defendant asserts that he was denied effective assistance of counsel during plea negotiations with the State. Defendant also contends that irrespective of whether he received ineffective assistance of counsel, the trial judge erred in sentencing him to consecutive sentences for all three of his convictions because mandatory consecutive sentences are not required under section 5—8—4(a) of the Code.

## I

In *People v. Whitfield*, 40 Ill. 2d 308 (1968), this court held that an attorney's failure to disclose a plea offer to his or her client may give rise to a claim of a constitutional violation, even though the client subsequently receives a fair trial. This general principle has been widely adopted. See, *e.g., People v. Ferguson*, 90 Ill. App. 3d 416 (1980); *United States v. Rodriguez*, 929 F.2d 747, 752-53 (1st Cir. 1991); *Johnson v. Duckworth*, 793 F.2d 898, 902 (7th Cir. 1986); *United States ex rel. Caruso v.*

*Zelinsky,* 689 F.2d 435, 438 (3d Cir. 1982); *Lloyd v. State,* 258 Ga. 645, 647, 373 S.E.2d 1, 3 (1988); *Lyles v. State,* 178 Ind. App. 398, 401, 382 N.E.2d 991, 994 (1978); *State v. Simmons,* 65 N.C. App. 294, 300, 309 S.E.2d 493, 497 (1983).

In the case at bar, defendant is not contending that his attorney failed to disclose the State's plea offer. Instead, defendant maintains that, but for his attorney's ineffective assistance during plea negotiations with the State, he would have accepted the plea offer and avoided trial. Although this specific situation was not addressed in *Whitfield,* it has been well established that the right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial. See, *e.g., People v. Blommaert,* 237 Ill. App. 3d 811 (1992); *Judge v. State of Carolina,* 321 S.C. 554, 558-59, 471 S.E.2d 146, 148-49 (1996); *In re Alvernaz,* 2 Cal. 4th 924, 934, 830 P.2d 747, 753-54, 8 Cal. Rptr. 2d 713, 719-20 (1992); *United States v. Day,* 969 F.2d 39 (3d Cir. 1992); *Toro v. Fairman,* 940 F.2d 1065, 1067 (7th Cir. 1991); *Lewandowski v. Makel,* 949 F.2d 884 (6th Cir. 1991); *Turner v. Tennessee,* 858 F.2d 1201, 1205 (6th Cir. 1988), *vacated on other grounds,* 492 U.S. 902, 106 L. Ed. 2d 559, 109 S. Ct. 3208 (1989); *Beckham v. Wainwright,* 639 F.2d 262, 265-66 (5th Cir. 1981); *Williams v. State,* 326 Md. 367, 605 A.2d 103 (1992); *Larson v. State,* 104 Nev. 691, 766 P.2d 261 (1988); *Commonwealth v. Napper,* 254 Pa. Super. 54, 385 A.2d 521 (1978); but see *People v. Russell,* 247 Ill. App. 3d 907 (1993).

In reviewing a claim of ineffective assistance of counsel, we apply the familiar two-part test established in *Strickland v. Washington,* 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984) (adopted by this court in *People v. Albanese,* 104 Ill. 2d 504, 525-26 (1984)). To prevail under *Strickland,* a defendant must show that his attorney's assistance was both deficient and prejudi-

cial. More precisely, a defendant must show that his attorney's assistance was objectively unreasonable under prevailing professional norms, and that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068. See also *Hill v. Lockhart*, 474 U.S. 52, 57, 88 L. Ed. 2d 203, 209, 106 S. Ct. 366, 369 (1985) (*Strickland* standard applicable to ineffective-assistance claims arising out of the plea process).

## Deficient Performance of Counsel

Defendant's argument regarding the deficient performance of his trial counsel centers upon section 5—8—4(a) of the Code. That section provides, in pertinent part:

"The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, or where the defendant was convicted of a violation of Section 12—13 [criminal sexual assault] or 12—14 [aggravated criminal sexual assault] of the Criminal Code of 1961, in which event the court shall enter sentences to run consecutively." 730 ILCS 5/5—8—4(a) (West 1992).

This court has determined that section 5—8—4(a) creates two exceptions to the general rule that consecutive sentences may not be imposed for multiple offenses which occur as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective. The first exception occurs when one of the multiple offenses is a Class X or Class 1 felony and severe bodily injury is inflicted; the second exception occurs when one of the multiple offenses is a violation of section 12—13 (criminal sexual assault) or 12—14 (aggravated criminal sexual assault) of the Criminal

Code of 1961. When a defendant's convictions bring him within either of these two exceptions, the mandatory consecutive sentencing provision of section 5—8—4(a) is triggered and consecutive sentences must be imposed. See *People v. Wittenmyer*, 151 Ill. 2d 175, 195-96 (1992); *People v. Bole*, 155 Ill. 2d 188, 196-97 (1993).

In the instant case, defendant was charged by information with three counts relating to the events of April 30, 1994. Count I of the information alleged that defendant committed residential burglary by knowingly entering the home of M.W. without authority and with the intent to commit criminal sexual assault. See 720 ILCS 5/19—3 (West 1992). Count II charged defendant with committing criminal sexual assault in that defendant performed an act of sexual penetration of the victim's sex organ with the knowledge that she was unable to give "knowing consent." See 720 ILCS 5/12—13(a)(2) (West 1992). Count III alleged that defendant committed a second act of sexual penetration, again with the knowledge that the victim was unable to give "knowing consent." See 720 ILCS 5/12—13(a)(2) (West 1992).

Criminal sexual assault is one of the offenses which triggers the application of the mandatory consecutive sentencing provision of section 5—8—4(a). Defendant's initial statements to the police, which were consistent with his subsequent trial testimony, indicate that defendant's actions during the early morning of April 30, 1994, were "committed as part of a single course of conduct." *Cf. Bole*, 155 Ill. 2d 188 (sexual assaults separated by several days were not committed as part of a single course of conduct). With respect to whether there was a "substantial change in the nature of the criminal objective" at any time during defendant's alleged crimes, it is clear that no such change occurred during the sexual acts. Furthermore, because the

underlying felony for the residential burglary charge was criminal sexual assault, a conviction on the residential burglary charge would indicate, under the facts in this case, that there was no "substantial change in the nature of the criminal objective" between that offense and the sexual acts. Accordingly, at the time of plea negotiations, it was apparent that defendant would be subject to the mandatory consecutive sentencing provision of section 5—8—4(a) if convicted of more than one of the counts with which he was charged.

Defendant maintains, however, that during plea negotiations with the State, his attorney did not inform him that he faced mandatory consecutive sentencing.[1] More specifically, defendant asserts that his attorney was unaware of section 5—8—4(a) and its relevance to defendant's case and, as a result, did not explain to defendant the true ramifications of rejecting the State's plea offer. In support of these assertions, defendant points to the following colloquy which took place during his sentencing hearing:

"[STATE'S ATTORNEY]: Yes Judge. People's recommendation here is 8 years in the Department of Corrections concurrent obviously I believe and the State's making no claim that these are two separate transactions or three separate transactions. The defendant was found guilty—

THE COURT: Well excuse me Mr. State's Attorney, we'll have to stop right there. I did a little reading on this and my understanding is [based on section 5—8—4(a) and case law] we're dealing here with [mandatory] consecutive sentences.

[STATE'S ATTORNEY]: Okay Judge.

THE COURT: I'll let [defense counsel] touch on that but that's the law.

---

[1]In its brief, the State acknowledges that when defendant made his initial appearance before the court on May 2, 1994, he was not told about the possibility of receiving consecutive sentences.

[STATE'S ATTORNEY]: In any case what the State's arguing for Judge is a term of 8 years in the Department of Corrections. ***

The State is asking, is recommending a sentence of 8 years in the Department of Corrections and how the Court arrives at that you know the State does stand corrected on the law as earlier stated. That's what the State's recommended.

THE COURT: Thank you Mr. State's Attorney.

[DEFENSE COUNSEL]: *** [I]t was never mentioned in the presentence report that it would be mandatory consecutive sentences. *** [T]he assumption [was] that consecutive sentences [were] not even a possibility in this case so we're kind of caught off surprise at this point with your Judge's conclusion that—

THE COURT: Wait a minute. It's not my conclusion. It's the law.

* * *

[DEFENSE COUNSEL]: *** I would propose at this time because it is a surprise because it's not in the presentence report and because it was never [the State's Attorney's] assumption nor mine that consecutive sentences [were] mandatory in this case. That I would like time to convince this Court otherwise and maybe a short recess at this point or coming back early next week and addressing this very serious issue because I can tell you this if that's the case it seriously impacted our plea discussions at that point before the case even started and I'm not prepared to argue that because it has not been brought to my attention until Your Honor just stated so and it's not in the presentence report.

THE COURT: Well the law is the law is the law and whether or not you knew it at the negotiation stage or not really doesn't matter since Mr. Curry was given all his rights and had a jury trial. Negotiations, whatever happened in negotiations doesn't really matter. The law is there whether or not it's in the presentence report or not the law is still there and counsel is supposed to be aware of the law."

As further support for his argument that defense counsel failed to inform him that he was subject to the

mandatory consecutive sentencing provision of section 5—8—4(a), defendant points to the stipulation and affidavit which were attached to his motion to reconsider his sentence. The stipulation states that "had [defendant] been called to testify, he would testify that had he known that consecutive sentences were mandatory, he would have accepted the State's plea of 4½ years of imprisonment on one count of criminal sexual assault." The affidavit, which was given by defense counsel, reads:

"During [plea] discussions, both myself and [the State's Attorney] assumed that Mr. Curry was not eligible for consecutive sentences.

On the eve of trial, [the State's Attorney] offered to dismiss all remaining charges if Mr. Curry pled to one count of criminal sexual assault and a sentence of 4½ years.

I nor anyone from my firm informed Mr. Curry that if he were convicted of more than one offense, consecutive sentences were mandatory.

After speaking with [the State's Attorney] regarding the plea offer, I informed Mr. Curry that in my opinion, given his lack of prior criminal record, if convicted of any of these charges in Menard County, it was my belief that there was a substantial possibility that he would receive close to the minimum sentence of four (4) years. Based upon this advice, Mr. Curry rejected the State's plea offer.

Mr. Curry informed me after his sentence that had he known that consecutive sentences were mandatory, he would have accepted the prosecutor's offer of a term of imprisonment of 4½ years."

Defendant maintains that the discussion at his sentencing hearing, his attorney's affidavit, and his own stipulated testimony firmly establish that during plea negotiations with the State, defense counsel was unaware of section 5—8—4(a) and thus failed to inform defendant of the actual risks associated with rejecting the State's plea offer. This failure, defendant argues, rendered defense counsel's performance during plea ne-

gotiations objectively unreasonable under the first prong of the *Strickland* test.

In response, the State maintains that defense counsel's advice to defendant was not unreasonable. According to the State, and the appellate court below, defense counsel's failure to inform defendant about the possibility of receiving consecutive sentences is not indicative of deficient performance when viewed in light of the appellate court precedent which existed at the time of plea negotiations. In order to understand this argument more fully, a brief discussion of the case law interpreting section 5—8—4(a) is necessary.

Section 5—8—4(a) provides that when a defendant commits multiple offenses as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, and either of the two triggering events described in the statute occur, then "the court shall enter sentences to run consecutively." Section 5—8—4(a) does not specify, however, whether consecutive sentences must be imposed for every offense arising out of the same course of criminal conduct, or whether the imposition of consecutive sentences is limited to those enumerated offenses which trigger the application of the statute. Currently, our appellate court is divided on this issue. The First and Third Districts have concluded that consecutive sentences are mandatory only for the offenses which trigger the application of section 5—8—4(a). See, *e.g.*, *People v. Williams*, 263 Ill. App. 3d 1098, 1108-09 (1st Dist. 1994); *People v. Medrano*, 282 Ill. App. 3d 887, 894-97 (1st Dist. 1996); *People v. Porter*, 277 Ill. App. 3d 194, 199 (1st Dist. 1995); *People v. Ivey*, 267 Ill. App. 3d 310 (3d Dist. 1994). The Fourth District, on the other hand, has concluded that consecutive sentences must be imposed for all the offenses committed as part of a single course of criminal conduct. See *People v. Childs*, 278 Ill. App. 3d 65, 74-78 (4th Dist. 1996).

In the instant case, the Appellate Court, Fourth District, concluded that defense counsel's performance was constitutionally adequate. In reaching this conclusion, the appellate court assumed that the crux of defendant's complaint regarding defense counsel's performance was that counsel failed to inform defendant that he could receive a consecutive sentence for his residential burglary charge. The court noted that under its recent decision in *Childs,* this failure by defense counsel would render his advice "grossly inaccurate." However, the appellate court pointed out that *Childs* was not decided until long after defendant's plea negotiations had taken place and, thus, could not provide a basis for finding defense counsel's performance deficient. The appellate court also concluded that under the appellate authority which was controlling at the time of the plea negotiations, *i.e., Williams,* "defense counsel's advice did not deprive defendant of effective assistance of counsel." Before this court, the State repeats this reasoning and argues that the case law concerning consecutive sentencing which existed at the time of defendant's plea negotiations precludes a finding that defense counsel's performance was constitutionally deficient. We disagree.

Defendant is not contending that his attorney failed to advise him of any particular case law interpretation of section 5—8—4(a). Rather, defendant maintains that his counsel was completely unaware of section 5—8—4(a) and, therefore, did not inform defendant of what was evident at the time of plea negotiations, *i.e.,* that because defendant was charged with committing criminal sexual assault, one of the crimes which unequivocally triggers the application of section 5—8—4(a), defendant would receive mandatory consecutive sentences if convicted of more than one of the offenses with which he was charged. For this reason, the split of appellate

court authority represented by *Williams* and *Childs* is, at root, irrelevant to defendant's claim and cannot support the State's argument that defense counsel's performance was constitutionally adequate.

Furthermore, the State is incorrect in arguing that defense counsel's advice was accurate under *Williams*. While *Williams* holds that consecutive sentences are mandatory only for the offenses which trigger the application of section 5—8—4(a), *Williams* also states that "sentences for crimes not enumerated in section 5—8—4(a) may be served concurrently to one another *after* the consecutive sentences have been served." (Emphasis added.) *Williams*, 263 Ill. App. 3d at 1108. Applying *Williams*' reasoning to the case at bar, defendant would have to serve his sentence for residential burglary (a crime not enumerated in section 5—8—4(a)) after he served his consecutive sentences for the two counts of criminal sexual assault. Thus, under the express holding of *Williams*, which was controlling at the time of plea negotiations, and also under the holding of *Childs*, defendant faced a mandatory minimum 12-year sentence if convicted of the three offenses with which he was charged. Defense counsel did not inform defendant of this fact. Contrary to the State's assertions, defense counsel's failure cannot be justified by the appellate court authority which existed at the time of the plea negotiations.

The State also argues that defense counsel's recommendation that defendant reject the State's plea offer was reasonable because counsel thought that, due to M.W.'s dreamlike state at the time of the assault, she would not be able to testify to any time period within which the acts of sexual penetration occurred. According to the State, defense counsel believed that this lack of evidence on timing would preclude a finding that defendant's acts were committed as part of a single

course of conduct and would eliminate the possibility of consecutive sentences. See *People v. Bell*, 259 Ill. App. 3d 572, 573-74 (1994) (trial court erred in finding that defendant's crimes were part of single course of criminal conduct where there was no testimony as to how far apart in time the acts of sexual penetration occurred and the two victims gave conflicting testimony on the timing of events).

We reject this argument for several reasons. First, as the record clearly reveals, defense counsel's only strategy at trial was to show that defendant had awakened M.W. and, therefore, that she was able to consent to the sexual acts. Defense counsel never attempted to establish that the two acts of sexual penetration were committed as separate courses of conduct, and indeed, he could not reasonably have made such an argument in light of defendant's testimony and statements to the police. In addition, defense counsel's sworn affidavit—which is unchallenged by the State—indicates that counsel advised defendant to refuse the plea offer because he believed defendant would receive close to a four-year prison term if convicted of any of the offenses with which he was charged. Counsel's advice was not based on the belief that he could prove that the two acts of sexual penetration occurred during distinct courses of conduct.

After trial, at the sentencing hearing, defense counsel did state that there was no "time frame" in which the two acts of sexual penetration occurred, and that they could have been separated by half an hour or "much shorter than that." However, these comments were made only after the trial judge had informed defense counsel about section 5—8—4(a). As such, the statements were little more than an attempt at damage control by defense counsel following his illumination on the law. They were not an indication of a defensive strat-

egy which existed at, or was employed after, the time of plea negotiations. Accordingly, we reject the State's argument that defense counsel's advice to defendant to refuse the plea offer was based on the strategic decision that, at trial, defense counsel would attempt to prove that the acts of sexual penetration were not committed as part of a single course of conduct.

A criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer. *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992); *Beckham v. Wainwright*, 639 F.2d 262, 267 (5th Cir. 1981); *People v. Correa*, 108 Ill. 2d 541, 549 (1985) (voluntariness of guilty plea depends upon whether the defendant had effective assistance of counsel); *Hill v. Lockhart*, 474 U.S. 52, 56-57, 88 L. Ed. 2d 203, 208-09, 106 S. Ct. 366, 369 (1985) (same). Concomitantly, a criminal defense attorney has the obligation to inform his or her client about the maximum and minimum sentences that can be imposed for the offenses with which the defendant is charged. I ABA Standards for Criminal Justice § 4—5.1, Commentary (2d ed. 1980); *Day*, 969 F.2d at 43 ("Knowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty"); *People v. Blommaert*, 237 Ill. App. 3d 811, 816-17 (1992); *Commonwealth v. Boyd*, 547 Pa. 111, 116, 688 A.2d 1172, 1174-75 (1997). In the case at bar, defense counsel did not fulfill this obligation. By his own admission, defense counsel was entirely unaware of section 5—8—4(a) and its relevance to defendant's case. As a result, counsel failed to provide defendant with the essential information that he faced a mandatory minimum 12-year prison term if convicted of the three counts with which he was charged. Indeed, by informing defendant that there was a substantial possibility he would receive close to a four-

year sentence if convicted of any of the three counts, defense counsel affirmatively misstated the consequences of rejecting the plea offer and made "unequivocal, erroneous, misleading representations" (*Correa*, 108 Ill. 2d at 552).

Defense counsel's recommendation to reject the State's plea offer was not the product of a defensive strategy or judgment which was proven to be unwise only in hindsight. See *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065 (noting the deference which must be given to tactical decisions made at trial). Rather, counsel's advice was predicated on an understanding of sentencing law which was plainly erroneous when viewed at the time of plea negotiations. Based on the facts before us, we conclude that defense counsel's performance during plea negotiations was objectively unreasonable and fell outside "the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065. See *Blommaert*, 237 Ill. App. 3d at 816-17 (significantly erroneous advice regarding sentencing range to which defendant was subject constituted constitutionally deficient assistance); *Day*, 969 F.2d at 43-44 (same); *Williams v. State*, 326 Md. 367, 605 A.2d 103 (1992) (same); *Commonwealth v. Napper*, 254 Pa. Super. 54, 60, 385 A.2d 521, 524 (1978) (same).

### Prejudice

In order to prevail on a claim of ineffective assistance of counsel, a defendant must show not only that his attorney's performance was deficient but also that the deficient performance was prejudicial to his defense. *Strickland*, 466 U.S. at 692, 80 L. Ed. 2d at 696, 104 S. Ct. at 2067. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

Initially, the State cites to language found in *Lockhart v. Fretwell,* 506 U.S. 364, 122 L. Ed. 2d 180, 113 S. Ct. 838 (1993), and maintains that, as a matter of law, defendant cannot establish that he was prejudiced by his counsel's deficient performance because defendant had no substantive or procedural right to be offered the opportunity to plea bargain. See *Fretwell,* 506 U.S. at 372, 122 L. Ed. 2d at 191, 113 S. Ct. at 844 ("Unreliability or unfairness [and hence, prejudice] does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him"). We reject the State's argument on this point. It is true that a defendant has no constitutional right to be offered the opportunity to plea bargain. *People v. Palmer,* 162 Ill. 2d 465, 476-77 (1994). However, in this case, the State did engage in plea bargaining with defendant. Thus, what is at issue here is whether, having received a plea offer from the State, defense counsel's deficient performance deprived defendant of his right to be reasonably informed as to the direct consequences of accepting or rejecting that offer. Defendant is not asserting that he had a right to be offered a plea bargain, nor is he asserting that his attorney's ineffectiveness deprived him of such a right.

The State also argues that defendant cannot establish that he was prejudiced by his counsel's performance because he cannot show that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the State's plea offer. According to the State, defendant rejected the plea offer because he believed he could convince the jury that M.W. knowingly and willingly engaged in sexual relations with him. Thus, the State argues, even if defendant had

received competent advice and had known that he faced mandatory consecutive sentencing, he still would have rejected the offer and proceeded to trial. We agree with the State that in order to establish prejudice, defendant must demonstrate that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer. Unlike the State, however, we believe defendant has made this showing.

Defendant's stipulated testimony states that he would have accepted the plea offer if he had been told that consecutive sentences were mandatory. Standing alone, this testimony is "subjective, self-serving, and *** insufficient to satisfy the *Strickland* requirement for prejudice." *Turner v. Tennessee*, 858 F.2d 1201, 1206 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902, 106 L. Ed. 2d 559, 109 S. Ct. 3208 (1989). However, in this case, there is additional evidence of record which corroborates defendant's self-serving allegations.

During the colloquy which took place during defendant's sentencing hearing, defense counsel stated that at the time of plea negotiations, he was unaware that defendant faced mandatory consecutive sentences and, further, that this fact "seriously impacted [the] plea discussions." Defense counsel subsequently elaborated upon this point in the affidavit attached to defendant's motion to reconsider his sentence. In that affidavit, defense counsel states:

"After speaking with [the State's Attorney] regarding the plea offer, I informed Mr. Curry that in my opinion, given his lack of prior criminal record, if convicted of any of these charges in Menard County, it was my belief that there was a substantial possibility that he would receive close to the minimum sentence of four (4) years. *Based upon this advice, Mr. Curry rejected the State's plea offer.*" (Emphasis added.)

The State does not challenge the credibility of the comments which defense counsel made during the

sentencing hearing, nor does it allege that counsel's subsequent affidavit was an attempt to aid defendant in fabricating a claim of ineffective assistance of counsel. See also *Day*, 969 F.2d at 46 n.9 (discussing why this type of "sandbagging" is generally not a concern). In support of its argument that defendant rejected the plea offer because he believed he could win his complete acquittal, the State simply notes that defendant presented a defense at trial. However, the fact that defendant chose to defend himself after rejecting the plea offer does little, by itself, to answer the question of why he refused the plea offer in the first place. See *Lewandowski*, 949 F.2d at 889 (noting that the question of determining prejudice turns on the motivation of the defendant in rejecting the plea offer). Accordingly, we conclude that defense counsel's affidavit provides independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice, and not, as the State suggests, upon other considerations. See *Day*, 969 F.2d at 45-46; *cf. Alvernaz*, 2 Cal. 4th at 945, 830 P.2d at 761, 8 Cal. Rptr. at 727 (no *Strickland* prejudice where the record, including statements from the defendant's attorney, established that the defendant's decision to reject a plea offer was based primarily upon his "persistent, strong, and informed hope" of acquittal at trial).

In the case at bar, defendant admitted to entering M.W.'s home without permission. He admitted to consuming at least 15 beers during the night of April 29, 1994, and early morning of April 30, 1994. He also admitted to every element of the sexual offenses save one: that he knew M.W. was unable to give "knowing consent." In light of these admissions, defendant's case was not a particularly strong one. See generally *Alvernaz*, 2 Cal. 4th at 940, 830 P.2d at 757-58, 8 Cal. Rptr. at 723-24 (a defendant's trial stance and testimony may be

relevant factors in establishing whether he would have accepted a plea offer); *Napper*, 254 Pa. Super. at 57, 385 A.2d at 522 (defense attorney's recommendation to reject a plea offer was unreasonable, in part, because the defendant's case "could not have been won").

Given defendant's admissions and his stipulated testimony; the disparity between the 12-year, mandatory minimum sentence which defendant faced and the $4^1/_2$-year plea offer; and most importantly, defense counsel's uncontradicted affidavit that defendant rejected the plea offer because of counsel's erroneous advice, we conclude that defendant has established a reasonable probability that he would have accepted the plea offer, absent his attorney's deficient performance. See *Lewandowski*, 949 F.2d at 889 (a reasonable probability that the defendant would have accepted a plea offer but for his counsel's deficient advice was established by the defendant's testimony that he would have accepted the offer and by the fact that the defendant originally entered a guilty plea and only withdrew that plea when he received incompetent assistance); *Turner*, 858 F.2d at 1206 (a reasonable probability of accepting a plea offer was established by the defendant's testimony and by the fact that the defendant made a close counter-offer to the State's plea offer and competent advice might have closed the gap between the two); *Williams*, 326 Md. at 381, 605 A.2d at 110 (a reasonable probability of accepting a plea offer was established by the defendant's testimony, the favorable terms of the plea offer and by the fact that defendant had followed counsel's advice in other matters).

The State also argues that defendant cannot establish that he was prejudiced by defense counsel's advice because he cannot show that the trial judge would have

accepted the plea agreement.[2] The State notes that under Supreme Court Rule 402(d) (134 Ill. 2d R. 402(d)) a trial judge is not bound by the terms of a plea agreement and, after following certain procedures, may order a disposition different from the one expressed in the agreement. Given this fact, the State maintains that in order to establish prejudice, defendant must show that there is a reasonable probability that he would have accepted the plea offer and, in addition, a reasonable probability that the trial judge would have accepted the plea agreement.

We note that the State has failed to cite any legal authority in support of its argument that in order to establish prejudice, the defendant must show a reasonable probability that the trial judge would have accepted the plea agreement. Significantly, *Whitfield* makes no mention of such a requirement. Indeed, in holding that a defense counsel's failure to disclose a plea offer gives rise to a constitutional violation, the *Whitfield* court expressly stated that "[t]here is nothing to indicate that the trial judge knew of the offer or its refusal." *Whitfield*, 40 Ill. 2d at 310. See also *Blommaert*, 237 Ill. App. 3d 811 (prejudice found although there was no showing that trial judge would have accepted the plea offer). In addition, our research reveals that the majority of cases from other jurisdictions do not require a defendant to prove that the trial judge would have accepted the plea agreement. See, *e.g.*, *Turner v. Tennessee*, 858 F.2d 1201, 1207 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902, 106 L. Ed. 2d 559, 109 S. Ct. 3208 (1989); *United States ex rel. Caruso v. Zelinsky*, 689 F.2d 435, 438 n.2

---

[2]The judge who presided over defendant's trial was not present during defendant's initial appearance before the court. However, because the State's plea offer was made on the "eve of trial," the trial judge would have been the one to accept or reject the plea agreement.

(3d Cir. 1982); *Commonwealth v. Napper*, 254 Pa. Super. 54, 56, 385 A.2d 521, 524 (1978); *Lyles v. State*, 178 Ind. App. 398, 402, 382 N.E.2d 991, 994 (1978); *Judge*, 321 S.C. at 560, 471 S.E.2d at 150 (prejudice shown by existence of reasonable probability that, but for counsel's advice the defendant would have accepted the plea; no requirement of showing that the trial judge would have accepted the plea); *Williams*, 326 Md. at 381, 605 A.2d at 110 (same). To our knowledge, only two courts have held that a defendant must establish that the trial judge would have accepted the plea agreement. See *Alvernaz*, 2 Cal. 4th at 941, 830 P.2d at 758, 8 Cal. Rptr. 2d at 724; *McClenithan v. Dugger*, 767 F. Supp. 257, 259 (M.D. Fla. 1991).

Consistent with *Whitfield*, and in line with the majority of decisions from other jurisdictions, we decline to impose a requirement that a defendant must show that there is a reasonable probability that the trial judge would have accepted the plea bargain in order to establish prejudice under *Strickland*. Such a requirement is at odds with the realities of contemporary plea practice (see, *e.g.*, *Napper*, 254 Pa. Super. at 58, 385 A.2d at 524) and presents inherent problems of proof (see generally Note, *Ineffective Assistance of Counsel and Guilty Pleas: Toward a Paradigm of Informed Consent*, 80 Va. L. Rev. 1699, 1704 (1994)). We believe, in sum, that it is "unfair and unwise to require litigants to speculate as to how a particular judge would have acted under particular circumstances." *Turner v. Tennessee*, 858 F.2d 1201, 1207 (6th Cir. 1988), *vacated on other grounds*, 492 U.S. 902, 106 L. Ed. 2d 559, 109 S. Ct. 3208 (1989). Moreover, we note that even if we were to hold that defendants must show a reasonable probability that the trial judge would have accepted the plea agreement in order to establish *Strickland* prejudice, in this case, defendant would likely have made that showing. During the hearing on

defendant's motion to reconsider his sentence, the trial judge stated: "Quite frankly, I am not thrilled with the idea of Mr. Curry serving 12 years because it wasn't my intention to give him that much time." In light of the charged offenses, the only way the judge could have imposed a sentence of less than 12 years would be if he had accepted a plea agreement in which the State agreed to drop at least one of the charged offenses. The judge's statement is thus direct evidence that he was amenable to accepting a plea agreement.

Based upon the unique circumstances of this case, we find that defendant was prejudiced by defense counsel's performance during plea negotiations. Because defendant has also shown that counsel's performance was objectively unreasonable, we hold that defendant has established his claim of ineffective assistance of counsel.

### Remedy

Defendant concedes, and we agree, that under the facts of this case, specific performance of the plea agreement is not a proper remedy. Instead, as appropriate relief, defendant requests that we remand this cause for a new trial, as was done in *Whitfield*. We note, however, that defendant's constitutional deprivation occurred during plea negotiations; he was not deprived of a fair trial. Thus, another trial, by itself, will not truly cure the specific constitutional violation which defendant suffered. See, *e.g.*, *State v. Kraus*, 397 N.W.2d 671, 674 (Iowa 1986) ("One more fair trial, or even a series of them," will not restore the "lost chance" of the plea bargain). *Whitfield* does not specify whether plea negotiations may resume once a new trial is ordered. See *Whitfield*, 40 Ill. 2d at 312. Accordingly, while we remand this cause to the circuit court for a new trial pursuant to *Whitfield*, we also determine that, in this case, the remedy of a new trial may include the resump-

tion of the plea bargaining process. See *Alvernaz*, 2 Cal. 4th at 944, 830 P.2d at 760, 8 Cal. Rptr. 2d at 726; *Lyles*, 178 Ind. App. at 402, 382 N.E.2d at 994; *Napper*, 254 Pa. Super. at 58, 385 A.2d at 524; see also *Turner v. Tennessee*, 940 F.2d 1000 (6th Cir. 1991). This remedy, we believe, is the one best "tailored to the injury suffered from the constitutional violation [which does] not unnecessarily infringe on competing interests." *United States v. Morrison*, 449 U.S. 361, 364, 66 L. Ed. 2d 564, 568, 101 S. Ct. 665, 668 (1981).

## II

Defendant's second principal contention on appeal is that the trial judge erred in his conclusion that consecutive sentences were mandatory for all three of defendant's convictions. Because defendant may be tried and sentenced again, we find it appropriate to address the merits of defendant's argument.

Section 5—8—4(a) provides that when a defendant commits multiple offenses as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, and at least one of those offenses is a triggering offense as described within the statute, then "the court shall enter sentences to run consecutively." As we have noted, however, the statute does not expressly indicate which sentences are to be made consecutive.

In the instant case, the Appellate Court, Fourth District, concluded that because the language quoted above refers to "sentences" in the plural, the legislature must have intended for consecutive sentences to be imposed for every offense committed as part of a single course of criminal conduct. See also *People v. Childs*, 278 Ill. App. 3d 65, 74-78 (4th Dist. 1996) (reaching the same result without an examination of the statutory language). Thus, because defendant was convicted of committing a triggering offense (criminal sexual assault)

as part of a single course of criminal conduct, the appellate court upheld the trial court's imposition of consecutive sentences for all three of defendant's convictions.

We do not believe that the use of the plural word "sentences" in the phrase "the court shall enter sentences to run consecutively" indicates that the legislature intended for nontriggering offenses to be subject to mandatory consecutive sentencing under section 5—8—4(a). In order for a sentence to be consecutive there must be at least one other sentence involved. Thus, the consecutive sentencing portion of section 5—8—4(a), by its nature, concerns more than one sentence. Logically, therefore, the statute must use the plural word "sentences." The use of the plural does not clarify, however, whether the legislature intended for consecutive sentences to be imposed for every offense, both triggering and nontriggering, arising out of the same course of criminal conduct. See *People v. Williams*, 263 Ill. App. 3d 1098, 1108 (1st Dist. 1994).

The triggering offenses listed in section 5—8—4(a) are crimes of a singular nature, involving "particularly serious invasions of the person." *People v. Toliver*, 251 Ill. App. 3d 1092, 1100 (1993); see also *People v. Segara*, 126 Ill. 2d 70, 78 (1988) (with each act of sexual assault, "the victim's psychological constitution and most intimate part of her being have been violently invaded"). By enacting the mandatory consecutive sentencing provision of section 5—8—4(a), the legislature sought to punish the commission of triggering offenses more harshly than the commission of other crimes. See, *e.g.*, *Ivey*, 267 Ill. App. 3d at 312. This legislative intent would be defeated if the triggering and nontriggering offenses were treated in a like manner. Accordingly, we hold that consecutive sentences are mandatory only for those offenses which trigger the application of section 5—8—4(a). *Williams*, 263 Ill. App. 3d at 1108-09; *People v. Me-*

*drano*, 282 Ill. App. 3d 887, 894-97 (1996); *People v. Porter*, 277 Ill. App. 3d 194, 199 (1995); *Ivey*, 267 Ill. App. 3d 310.

Defendant argues that in his case, if he should again be convicted on all three of the counts with which he is charged, he should be permitted to serve his sentence for residential burglary concurrent to his sentences for criminal sexual assault. We disagree. The purpose of the mandatory consecutive sentencing provision of section 5—8—4(a) is to punish the commission of triggering offenses more harshly than the commission of nontriggering ones. If the sentence for one of defendant's convictions of criminal sexual assault were permitted to run concurrent to his sentence for residential burglary, then that conviction for criminal sexual assault would be treated no differently, and no more harshly, than a conviction of a nontriggering offense. See, *e.g.*, *Wittenmyer*, 151 Ill. 2d at 178, 195-97 (upholding the imposition of sentences for multiple nontriggering offenses which ran concurrent to one another but consecutive to a single sentence for a triggering offense). This result would be contrary to the legislative purpose behind section 5—8—4(a). Consequently, section 5—8—4(a) must be construed so that any consecutive sentences imposed for triggering offenses be served prior to, and independent of, any sentences imposed for nontriggering offenses. Sentences for multiple nontriggering offenses may be served concurrently to one another after any consecutive sentences for triggering offenses have been discharged. See *Williams*, 263 Ill. App. 3d at 1108; *Medrano*, 282 Ill. App. 3d at 896. Our adoption of this holding means, in the instant case, that if defendant is again tried and convicted on all three counts, he will have to serve his sentence for residential burglary after he serves his consecutive sentences for the two counts of criminal sexual assault.

540

For the foregoing reasons, the judgments of the appellate and circuit courts are reversed. The cause is remanded to the circuit court for proceedings consistent with this opinion.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*