NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 180066-U

NO. 4-18-0066

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 5, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| COTY W. DECKER | ) | No. 12CF1607 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Heidi N. Ladd, |
| | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Justices Cavanagh and Harris concurred in the judgment.

**ORDER**

¶ 1     *Held*:   The appellate court affirmed, finding the circuit court did not err in denying
defendant postconviction relief following an evidentiary hearing.

¶ 2     In March 2017, defendant, Coty W. Decker, filed *pro se* a postconviction petition

pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)),

alleging ineffective assistance of his trial counsel.  In August 2017, defendant, through his

appointed counsel, filed an amended postconviction petition and the State filed a motion to

dismiss.  In January 2018, the circuit court held an evidentiary hearing on the matter and denied

defendant's amended postconviction petition.

¶ 3        Defendant appeals, arguing the circuit court erred by denying his claim of ineffective assistance of counsel based on his trial counsel's failure to inform him of a favorable plea offer.  We affirm.

¶ 4                                I. BACKGROUND

¶ 5        On October 9, 2012, the State charged defendant by information with aggravated unlawful possession of a firearm by a felon (count I) (720 ILCS 5/24-1.1(e) (West 2010)), and obstructing justice (count II) (*id.* § 31-4(a)) (Champaign County case No. 12-CF-1607).

¶ 6        On November 1, 2012, defendant posted bond and then failed to appear on November 20, 2012, and again on January 22, 2013.  Defendant was later apprehended in Nevada and returned to Champaign County.

¶ 7        On April 17, 2013, at an arraignment hearing, the circuit court admonished defendant regarding the charges against him in Champaign County case No. 12-CF-1802, wherein the State alleged that "on November 1 [defendant] committed the offense of burglary *** and [t]heft of property on November 5 having a value in excess of $500."

¶ 8        On August 26, 2014, pursuant to a fully negotiated plea, defendant pleaded guilty to count I (Champaign County case No. 12-CF-1607) in exchange for a sentence of 14 years' imprisonment in the Illinois Department of Corrections and the State's dismissal of (1) count II (Champaign County case No. 12-CF-1607), (2) an additional count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2012)), and (3) all counts alleged in Champaign County case No. 12-CF-1802.

¶ 9        In March 2017, defendant filed *pro se* a postconviction petition pursuant to the Act, alleging ineffective assistance of his trial counsel.

¶ 10	In August 2017, defendant, through his appointed counsel, filed an amended postconviction petition alleging he was denied the effective assistance of his trial counsel where counsel failed to promptly communicate a favorable plea offer from the State to resolve Champaign County case No. 12-CF-1607. The State filed a motion to dismiss defendant's amended postconviction petition, contesting defendant's assertions.

¶ 11	In January 2018, the circuit court held a third-stage evidentiary hearing on defendant's amended postconviction petition and the following evidence was adduced.

¶ 12	Assistant Public Defender Amanda Riess testified she had been employed with the Champaign County Public Defender's Office since 2006 and was assigned defendant's case on either October 9 or 10, 2012. Riess stated she received the State's discovery responses on October 16, 2012, but could not recall whether she spoke with defendant, either in person or on the phone, prior to his release on November 1, 2012. Riess testified the State attached an offer to the discovery "for a cap of five years in the Department of Corrections" in exchange for defendant's guilty plea. Riess admitted she did not keep detailed notes but offered the following statement as to her usual practice:

> "Typically[,] when I receive discovery or offers, I will call my clients, if my client is in custody, within a couple of days or as soon as I'm able to call them, to discuss the police reports and relay any offers." If a client was released on bond, Riess testified her normal practice was "to call a client once the person posts bond, to tell them any offers, if [she] had not yet had an opportunity to do so while they were in custody."

¶ 13	During cross-examination, Riess stated defendant, at no point, made an effort to schedule an appointment or speak with her. Riess explained, "Typically clients, when they bond

- 3 -

out prior to pretrial, they will contact the Public Defender's Office and schedule an appointment, or at least leave a message where I can call them back." On December 5, 2012, following defendant's failure to appear in court on November 20, 2012, a letter went out to defendant's provided address informing him of a bond forfeiture hearing on January 22, 2013. Upon defendant's return to custody in April 2013, his case was reassigned to "a different attorney."

¶ 14		Assistant Public Defender Janie Miller-Jones testified she was assigned to defendant's case from July 2013 through August 2014. At the time she received defendant's file, the five-year offer from the State in exchange for defendant's guilty plea did not exist. Miller-Jones testified the offer "couldn't be conveyed because [defendant] was on [the] run. He's basically out on warrants, so no offer could be conveyed to him because he wasn't there. And then once he picked up the second case, that offer never existed again." During cross-examination, Miller-Jones described defendant as "[d]ifficult" and "always want[ing] to have things the way he wants to have things." Miller-Jones characterized defendant's approach to plea negotiations as, "Generally, he doesn't like to accept offers off the bat or make offers off the bat, counter-offers. He likes to wait and see what's better he can get."

¶ 15		Defendant testified on his own behalf stating Riess called him "a week or so" following his arraignment on October 9, 2012, to inform him that she would be in contact with him in the future to go over his discovery. Defendant asserted no one from the Champaign County Public Defender's Office contacted him regarding a plea offer prior to his release on bond (November 1, 2012), through April 2013. Defendant testified had he been made aware of the initial five-year offer, he would have accepted it. On cross-examination, defendant testified he was arrested on March 26, 2013, in Nevada and subsequently pleaded guilty to a federal firearm offense. Defendant stated he left for Nevada "[m]aybe two, two and a half months" after

being released on bond and that he remained there "maybe like, two and a half, three months." Defendant knew leaving Illinois was a violation of his bond. Defendant admitted being informed of his November 20, 2012, court date prior to his release on bond but failed to appear because "[he] had a lot going on." Defendant also admitted he never contacted the public defender's office or made an effort to schedule an appointment because, in the past, he "never had to contact them."

¶ 16    Assistant State's Attorney Scott Bennett testified that on October 15, 2012, he made an initial five-year plea offer on a "handwritten piece of paper" and included it with defendant's discovery. Defendant fled the jurisdiction and was later returned to Champaign County in April 2013. Bennett testified the initial offer "had been long gone at that point," stating:

>"In the five months that came after [making that offer], where we had [defendant] leaving the jurisdiction, the fact that the case got much stronger with the fingerprint match, *** and then he—he was alleged to have committed a new offense just days after bonding out, he doesn't [come] back to court, then leaves the jurisdiction to commit more offenses *** clearly indicated at that point that he was not a good candidate for the lower end of the range and it was more appropriate to have a higher offer in the Department of Corrections."

Bennett further recalled the "up and down nature" of defendant's case stating, "No matter what, every time we made an offer, *** [defendant] wanted *** something a little bit different." Bennett testified on cross-examination the five-year offer was no longer available within "the first few days of November," after reviewing the allegations in Champaign County case No. 12-CF-1802.

¶ 17    At the conclusion of the hearing, the circuit court denied defendant's postconviction petition.  The court noted "under the Illinois Rule of Evidence, 406, [the court] can consider habit and practice."  Although Riess could not "testify whether or not she actually specifically did it ***," the court considered her "practice to relay, as soon as possible, an offer that was made by communicating with her client in the Champaign County Correctional Center.  And to call if she learned a client had posted bond and tell them the offer."  The court determined defendant had "an extremely diminished credibility *** if not, no credibility at all" and stated, "if [defendant] wanted to follow-up with his case and was anxious to accept any offers, all he had to do was appear on November 20th, or at the very least stay in touch with his attorney, and he did neither of those, even by his own admission."  Considering the brief duration of Riess's representation of defendant, the court found it "questionable and unrealistic" defendant would have accepted the plea offer and had the matter resolved before his commission of the charges in Champaign County case No. 12-CF-1802, just days after his release on bond.  Thus, in denying defendant's amended postconviction petition, the court determined Riess "did everything she could in the short, brief interval of time she had to communicate with the Defendant, and it was his own actions *** that made it impossible to do anything further with that offer."

¶ 18    This appeal followed.

¶ 19                      II. ANALYSIS

¶ 20    On appeal, defendant challenges the circuit court's denial of his amended postconviction petition after an evidentiary hearing.  We affirm.

¶ 21    The Act provides a remedy for defendants who have suffered a substantial violation of constitutional rights at trial.  *People v. Pendleton*, 223 Ill. 2d 458, 471, 861 N.E.2d 999, 1007 (2006).  The Act sets forth three stages of proceedings.  *Id.* at 471-72.  At the first

stage, the circuit court independently reviews the defendant's postconviction petition and determines whether "the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). If it finds the petition is frivolous or patently without merit, the court must dismiss the petition. *Id.* If the court does not dismiss the petition, it proceeds to the second stage, where the court may appoint counsel for an indigent defendant. *Pendleton*, 223 Ill. 2d at 472. Defense counsel may amend the defendant's petition to ensure the defendant's contentions are adequately presented. *Id.* Also, at the second stage, the State may file a motion to dismiss the defendant's petition or an answer to it. *Id.* If the State does not file a motion to dismiss or the court denies such a motion, the petition advances to the third stage, wherein the court holds a hearing at which the defendant may present evidence in support of his or her petition. *Id.* at 472-73. At both the second and third stages of the postconviction proceedings, "the defendant bears the burden of making a substantial showing of a constitutional violation." *Id.* at 473. When a petition advances to an evidentiary hearing and fact-finding and credibility determinations are involved, this court will not reverse the circuit court's decision unless it is manifestly erroneous. *Id.* A "manifest error" is one that "is clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85, 686 N.E.2d 574, 582 (1997).

¶ 22 On appeal, defendant argues the circuit court erred by denying his ineffective assistance of counsel claim based on trial counsel's failure to inform him of a favorable plea offer. The State contends the court's denial was proper.

¶ 23 Our supreme court has "recognized a sixth amendment right to effective assistance of counsel during plea negotiations." *People v. Hale*, 2013 IL 113140, ¶ 16, 996 N.E.2d 607. Specifically, " '[a] criminal defendant has the constitutional right to be *reasonably* informed with respect to the direct consequences of accepting or rejecting a plea offer.' "

(Emphasis in original.) *Id.* (quoting *People v. Curry*, 178 Ill. 2d 509, 528, 687 N.E.2d 877, 887 (1997)). That right "extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *Id.* This court analyzes ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163 (1999).

¶ 24    To obtain reversal under *Strickland*, a defendant must prove (1) his counsel's performance failed to meet an objective standard of competence and (2) counsel's deficient performance resulted in prejudice to the defendant. *Id.* To satisfy the deficiency prong of *Strickland*, the defendant must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). *Id.* Further, the defendant must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Id.* To satisfy the prejudice prong, the defendant must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceeding's result would have been different. *Id.* Under *Strickland*, when a case is more easily decided on the ground of lack of sufficient prejudice rather than that counsel's representation was constitutionally deficient, the court should do so. *Strickland*, 466 U.S. at 697.

¶ 25    As to the prejudice prong in the context of a plea offer, the United States Supreme Court has held a defendant must show a reasonable probability of the following: (1) he or she would have accepted the plea offer but for counsel's deficient advice, (2) the plea would have been entered without the State canceling it, (3) the circuit court would have accepted the plea bargain, and (4) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 566 U.S.

134, 147 (2012); see also *Lafler v. Cooper*, 566 U.S. 156, 164 (2012). In this case, defendant has failed to meet the first and second factor for establishing prejudice.

¶ 26        To demonstrate a reasonable probability that a defendant would have accepted a plea, but for counsel's ineffectiveness, a defendant must offer more than his own self-serving statements. *Hale*, 2013 IL 113140, ¶ 18. Although defendant testified he would have accepted the State's five-year offer had trial counsel informed him of the plea offer, his testimony is the only evidence he offers in support of that claim. Moreover, we give great deference to credibility determinations made by the circuit court and will only reverse such determinations if they are against the manifest weight of the evidence. *People v. Richardson*, 234 Ill. 2d 233, 251, 917 N.E.2d 501, 512 (2009). Here, the circuit court found defendant's credibility to be "extremely diminished" and found Riess's testimony to be "very believable" regarding her practice and habit to communicate plea offers to her clients in every case. Considering nearly six years had passed since counsel's representation of defendant, it is understandable Riess could not specifically recall informing defendant of the plea offer. We also agree with the court that "by absenting himself from the jurisdiction," defendant made it impossible for Riess to communicate with him. Additionally, defendant's recalcitrant attitude and gamesmanship throughout multiple plea negotiations belied his testimony that he would have accepted the State's initial offer without attempting to negotiate a lower sentence.

¶ 27        Second, defendant fails to show a reasonable probability the plea would have been entered without the State canceling it. See *Hale*, 2013 IL 113140, ¶ 19. As discussed above, this court will not reverse the circuit court's decision unless it "is clearly evident, plain, and indisputable" that the court's determination was erroneous. *Ruiz*, 177 Ill. 2d at 384-85. Here, the circuit court found it "questionable and unrealistic" that Champaign County case No.

12-CF-1607 would have been resolved before the commission of the alleged offenses in Champaign County case No. 12-CF-1802, considering the brief period of time between defendant's release on bond and the dates of those offenses. Bennett testified the offer was no longer available as soon as he reviewed the charges alleged in Champaign County case No. 12-CF-1802, "in the first few days of November," and was "long gone" following: (1) defendant's failure to return to court on November 20, 2012, and January 22, 2013, (2) defendant's flight from Illinois, (3) evidence of a fingerprint match, and (4) defendant's commission of a federal offense in Nevada.

¶ 28        Since defendant failed to meet the first two factors for establishing prejudice, he cannot establish the prejudice prong of the *Strickland* test, and we need not address the other two factors. Thus, the circuit court's judgment was not manifestly erroneous.

¶ 29                                III. CONCLUSION

¶ 30        For the reasons stated, we affirm the circuit court's judgment.

¶ 31        Affirmed.