2019 IL App (1st) 173121-U

No. 1-17-3121

November 25, 2019

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 13 CR 2058 |
| | ) | |
| TROY GRAVES, | ) | Honorable |
| | ) | James Michael Obbish, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Presiding Justice Griffin and Justice Pierce concurred in the judgment.

**ORDER**

¶ 1    *Held*: We affirm the trial court's summary dismissal of defendant's post-conviction petition where defendant failed to state the gist of a constitutional claim.

¶ 2    Defendant Troy Graves appeals from the summary dismissal of his petition for post-conviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). He contends the trial court erroneously dismissed his petition where he set forth the gist

of constitutional claims of ineffective assistance of plea counsel and the unknowing nature of his guilty plea. For the following reasons, we affirm.

¶ 3                                                    BACKGROUND

¶ 4     On August 25, 2014, defendant pled guilty to one count of aggravated criminal sexual assault for threatening to kill 16-year-old K.B. while holding a firearm, forcing her behind a school and then forcing his penis into her vagina on November 19, 2012. He was sentenced to 22 years' imprisonment.

¶ 5     Defendant was charged by indictment with six counts of aggravated criminal sexual assault and five counts of aggravated kidnapping. He was represented by private counsel.

¶ 6     Prior to trial, counsel filed a motion to suppress statements. After a hearing, the court denied the motion on April 7, 2014. On May 15, 2014, the State presented an offer of 24 years' imprisonment to defendant in exchange for a guilty plea. Defendant rejected the offer and the case was set for a jury trial on August 25, 2014. On that date, defense counsel informed the court defendant would waive his right to a jury trial and seek a bench trial. The court verified that counsel had discussed with defendant the decision to have a bench trial, and counsel confirmed he had done so. The court asked defendant if it was his choice to have a bench trial, and defendant stated, "Yes, sir."

¶ 7     The State noted for the record that it previously made and revoked an offer of 24 years' imprisonment and that defendant was facing a minimum of 63 years' imprisonment. The State requested that the court admonish defendant pursuant to *People v. Curry*, 178 Ill. 2d 509 (1997) (abrogated by *People v. Hale*, 2013 IL 113140). The court informed defendant that he faced a minimum of 63 years' imprisonment, based on "the state of the law with consecutive sentences

and mandatory minimums" and firearm enhancements. Further, the court admonished defendant that the State made an offer of 24 years' imprisonment in exchange for his guilty plea. Defendant had the right to reject the offer, but the court was required to "just make sure [he was] aware" that if he chose to reject the offer and was convicted, he "could end up with far more than 24 years." The court informed defendant that if he rejected the offer, the State would withdraw it and would "no longer be obligated to tender that offer to you." The court clarified that it was not "telling" defendant to "take it or not take it," but was merely informing defendant of the consequences of rejecting the plea.

¶ 8    The following colloquy ensued:

"THE COURT: Were you, in fact, informed by your attorney that the State had made that offer of 24 years in the Illinois Department of Corrections? It would be at 85 percent.

[ASA]: Yes.

THE COURT: Was that offer extended to you?

[DEFENDANT]: Yes.

THE COURT: All right. And is it your decision then to reject that offer, and you don't want it?

[DEFENDANT]: What do consecutive mean?

THE COURT: Consecutive means that what happens in the charges involving various forms of sexual assault, if a person is found guilty of committing, let's say, one act of penetration, and then -- but during the sexual assault, there is a second act of

penetration, it can be different parts of the body, different parts of the male touching various sexual organs of a female. It can be oral, it can be vaginal, it can be anal.

If a person is convicted of penetrating any portion of a victim's body or more than one portion, then the sentences must run consecutive to one another. That means the charge -- or if you're convicted of, let's say, a vaginal penetration and an oral penetration, the sentences would have -- for each one have to run consecutive to one another, and if there is proof that a person was armed with a firearm at the time that those two matters occurred, then those sentencing enhancements also run consecutive.

You end up oftentimes with a situation where a Class X felony, meaning [6] years is the minimum sentence, goes up to 30, but the [6] becomes 21 because of a 15 year sentencing enhancement for possession of a firearm. So a minimum sentence is often 21 years, but it can be as high as 51, and that's for one act.

If there are two acts, then the minimum sentence pretty much doubles, so that it's 21 plus 21 or 42 because of the mandatory consecutive nature of the sentence and the fact that both are enhanced with the extra 15 years for a firearm.

[ASA]: There's an aggravated kidnapping alleged, also, Judge. *** It's a Class X, so there's another 21.

THE COURT: So if you're convicted of kidnapping as well as a firearm, then the State's position is you're looking at yet another [6] to 15, so 21. So that's why the minimum sentence could be 63 years minimum if you're convicted of two different acts of aggravated criminal sexual assault and aggravated kidnapping along with the firearm. I hope you understand what I'm saying now as far as consecutive.

[DEFENDANT]: I understand. Can I have a moment to talk to my lawyer, please?

THE COURT: I'll pass it briefly. Go ahead."

¶ 9    The court passed the case. When it was recalled, the State informed the court that it was offering defendant a plea on count 1 (aggravated criminal sexual assault) for 22 years' imprisonment. The court told defendant that, although there had not been a Rule 402 conference on the case, defense counsel and the ASA informed the court that they had reached an agreement where defendant would plead guilty in exchange for a 22-year sentence. The sentence was comprised of 7 years for the charge and 15 years for the firearm enhancement, and defendant would be required to serve 85 percent of it. Defendant acknowledged that the court's summary was his understanding of the plea. The court further told defendant his mandatory supervised release (MSR) term was three years to "possibl[y]" the rest of his life, and he would be required to register as a sex offender upon release from custody and submit to DNA indexing and testing for sexually transmitted diseases (STD) and HIV. The State agreed to nolle the remaining charges. The court again asked defendant if that was his understanding of the agreement, and defendant responded, "Yes, sir."

¶ 10    The court then explained count 1 to defendant. Specifically, the court informed defendant he was charged with aggravated criminal sexual assault for knowingly committing an act of sexual penetration upon the victim, B.K., on November 29, 2012. Defendant was charged with using force or threat of force to make contact with his penis and B.K.'s vagina and acted in such a manner as to threaten or endanger B.K.'s life by holding a firearm and threatening to kill her. Defendant acknowledged that he understood the charge and wished to plead guilty.

¶ 11    The court admonished defendant that by pleading guilty he would "waive very fundamental rights," including his right to plead not guilty and his right to proceed to trial where the State would be required to prove his guilt beyond a reasonable doubt. If he chose to go to trial, defendant could proceed by way of either a jury or bench trial. The court explained that a bench trial was where the court would decide his guilt or innocence. Defendant indicated he knew what a jury trial was and acknowledged his signature was on a written jury waiver and presentence investigation report waiver. He further acknowledged that he was waiving his right to a bench trial.

¶ 12    With respect to the trial rights he was waiving, the court admonished defendant that by pleading guilty, he would "not get to see any of the State's witnesses appear in open court to testify against [him]." He would give up his right to have counsel cross-examine the State's witnesses, waive his right to call witnesses in his defense, and waive his right to testify on his own behalf. The court continued,

> "Do you understand, sir, that when you plead guilty, you're waiving all of those trial rights; plus, any other trial rights you might have had, because when you plead guilty, there will be no trial?
>
> [DEFENDANT]: Yes, sir."

¶ 13    With regard to the potential sentence, the court told defendant aggravated criminal sexual assault was a Class X felony with a sentencing range of 6 to 30 years' imprisonment, plus an additional 15-year firearm enhancement. He would be required to serve 85 percent of the sentence. Thus, the minimum sentence he would face on count 1, if he proceeded to trial, was 21 years and the maximum was 45 years. The court informed defendant again of the MSR term and

that various fees would be imposed, in addition to the DNA, STD, and HIV testing he would be required to complete. The defendant stated he understood the possible penalties and consequences of pleading guilty.

¶ 14    The State's factual basis showed B.K. would testify that at around 10 p.m. on November 19, 2012, she was 16 years old and walking to a friend's house. Defendant, whom she would identify in court, approached her, displayed a silver handgun, and told her to look away or he would kill her. Defendant instructed B.K. to keep walking or he would shoot her. He forced B.K. behind a nearby school, forced her pants down, and forcibly inserted his penis into her vagina. The evidence would further show B.K. immediately outcried and identified defendant in both a photographic array and physical lineup. DNA evidence recovered from B.K.'s vaginal swab matched defendant. Defendant additionally gave a handwritten statement admitting to the crime. Defense counsel stipulated "that is what the State's evidence would show."

¶ 15    Defendant acknowledged that no one had forced or threatened him to plead guilty, and he had not been promised anything in exchange for pleading guilty. Defendant further acknowledged that he was pleading guilty of his own free will. The court found defendant understood the nature of the charge, his rights under the law, the possible penalties that could be imposed, and the consequences of his plea. The court additionally found there was a sufficient factual basis for the plea and that defendant entered into the plea freely and voluntarily.

¶ 16    No further evidence was presented in aggravation or mitigation, and the State noted defendant had no prior felony convictions. When asked if he would like to speak in allocution, defendant stated, "I just want to thank [defense counsel] for working with me. Thank you and the State's Attorney for giving me another opportunity to get my life right, and I want to ask if it's

possible if I can go to a drug facility for continued uninterrupted treatment." The court agreed to recommend that defendant be allowed to participate in a drug treatment program. The court went on,

> "I don't know what caused you to do what you did in this case. It seems you are remorseful based on your statement here and you're appreciative of what your attorney has been able to achieve for you. It may not seem -- I think you have finally come to the realization of what [defense counsel] has been able to do here and what the State was willing to do to try to prevent you from actually suffering the enormity of the consequences that another decision could have resulted in. And I sadly see it on other cases where individuals turn down what are very reasonable offers and then end up literally assigning themselves to the Department of Corrections for the rest of their life because there's no way they can get out before they complete 85 percent of those triple digit numbers."

¶ 17 The court sentenced defendant to 22 years' imprisonment, in accordance with the plea agreement, and then admonished him of his appellate rights. Regarding defendant's appellate rights, the court stated:

> "Even though you plead guilty, you still do have a right to appeal. However, before you could do that, you would have to file in this Court within 30 days of today's date in writing a motion or a petition that would ask me to either reconsider the sentence that has been imposed, or you can may ask that the judgment of conviction which has been entered against you today be vacated, or you may ask for leave of Court to withdraw this plea of guilty.

If you choose to file any of those motions, you must set forth within them in writing the grounds or, in other words, the reasons as to why I should grant them. If you do not specify those grounds when you file the written motions, the grounds have been waived, and you would be unable to ever pursue those grounds in the future.

If your motions are granted, I'll vacate the plea, the sentence, and the judgment of conviction, and then I would set this case down for trial. Before the trial, though, I would allow the State on their motion to reinstate all of the other counts or charges in this indictment against you so that you would go to trial on this indictment as it stood before your plea today, which was a total of 11 counts I believe.

If you could not afford a lawyer to assist you with the motions that I have just spoken to you about, I would appoint one for you at no cost to you, and I would provide with you a free copy of a transcript of everything that did take place today regarding your plea and your sentence.

Again, though, be aware, if you fail or forget to place the grounds or reasons in your written motions asking me to reconsider the sentence or to allow you to withdraw your plea of guilty, if you fail to file those motions within 30 days of today's date in writing in this Court, then you would be permanently barred from ever being able to file it in the future, and that would prevent you from being able to appeal any decision of this Court to a higher court.

Do you understand your post plea and your appellate rights, [defendant]?

[DEFENDANT]: Yes, sir."

¶ 18    Defendant did not move to withdraw his plea or file a direct appeal.

¶ 19 On August 16, 2017, defendant filed a post-conviction petition with the assistance of private counsel. In his petition, defendant requested to withdraw his plea and vacate his conviction. In his petition, defendant first argued that plea counsel was ineffective for (1) failing to investigate his case "in any substantial fashion;" (2) failing to visit him in jail during his incarceration from December 3, 2012 through August 25, 2014; (3) failing to consult defendant and explain the "legal dynamics of the case;" (4) improperly disregarding defendant's assertion that sex with B.K. was consensual and failing to assert an affirmative defense in his answer, over defendant's objection; (5) failing to explain to defendant the difference between concurrent and consecutive sentences "which proved to be a critical issue in [defendant's] unintelligent acceptance of the guilty plea; (6) failing to explain the charged counts in the indictment; and (7) improperly persuading defendant to plead guilty by telling him " 'all the State needs is your confession to convict you, which they have,' " despite knowing defendant "was vehemently contesting the so-called 'confession.' "

¶ 20 Defendant additionally argued that his U.S. and Illinois constitutional rights were "substantially denied in that the trial court judge improperly admonished [him] concerning 'consecutive sentencing,' et al. in that:" (1) the admonishment about his 63-year minimum sentence was inaccurate and was "in fact more than what the statute provides giving [*sic*] the State's charging scheme;" (2) the court "failed to provide a legally sufficient answer" to defendant's question regarding consecutive sentences, which "was a critical issue in [defendant's] unintelligent plea of guilty;" (3) the admonishment that defendant could receive " 'far more' " than 24 years was "inherently vague and subject to mis-interpretation or mis-construction by [defendant], thereby depriving [him] of definitive information concerning his

possible options should he choose to forego a guilty plea and go to trial; (4) the court exercised undue influence and bias during the plea proceedings "by making gratuitous commentary complementing [*sic*] the State and [defendant's] attorney" and by stating that defendant seemed remorseful and appreciative that the ASA and plea counsel were able to "prevent [him] actually suffering the enormity of the consequences that another decision could have resulted in."

¶ 21    In support of his petition, defendant attached a copy of the transcript of his August 25, 2014, plea hearing.

¶ 22    On November 2, 2017, the trial court summarily dismissed defendant's petition in a written order, finding it frivolous and patently without merit.

¶ 23                                              ANALYSIS

¶ 24    On appeal, defendant contends the trial court erred in summarily dismissing his petition because he stated the gist of a constitutional claim. Specifically, he alleges his petition sufficiently pled claims of ineffective assistance of counsel and improper plea admonishments.

¶ 25    The Act sets forth a three-stage process for criminal defendants to challenge their convictions or sentences on grounds of constitutional violations. *People v. Beaman*, 229 Ill. 2d 56, 71 (2008). During first stage post-conviction proceedings, the trial court must independently review the petition, taking the allegations as true, and determine whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014). A petition may be summarily dismissed as "frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Hodges,* 234 Ill. 2d 1, 11-12 (2009); *People v. Tate,* 2012 IL 112214, ¶ 9. A claim has no arguable basis when it is based on an indisputably meritless legal theory,

such as one completely contradicted by the record, or a fanciful factual allegation, such as those that are fantastic or delusional. *People v. Brown,* 236 Ill. 2d 175, 185 (2010).

¶ 26    At the first stage of proceedings, a petition need only present the gist of a constitutional claim to survive. *People v. Allen*, 2015 IL 113135, ¶ 24. Presenting a "gist" of a constitutional claim is a low threshold, and only limited detail is necessary for the petition to proceed beyond the first stage of post-conviction review, as opposed to setting forth a claim in its entirety. *Hodges,* 234 Ill. 2d at 9; *People v. Williams,* 364 Ill. App. 3d 1017, 1022 (2006). The defendant need only "allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act." *Hodges*, 234 Ill. 2d at 9. Despite this low threshold, however, a defendant is not excused from providing factual support for his claims and must show a sufficient factual basis to demonstrate that the allegations in the petition are "capable of objective or independent corroboration." *People v. Collins,* 202 Ill. 2d 59, 67 (2002). We review the summary dismissal of a petition *de novo. Id.*

¶ 27    As an initial matter, although the trial court explicitly dismissed defendant's petition as frivolous and patently without merit, defendant argues that the trial court applied the wrong standard when dismissing his petition because it failed to make a "definitive ruling that [the] petition fails to meet the 'gist requirement.' " As previously described, it is well established that a trial court may summarily dismiss a petition as frivolous and patently without merit. See 725 ILCS 5/122-2.1(a)(2) (West 2014); *Hodges,* 234 Ill. 2d at 11-12; *Tate,* 2012 IL 112214, ¶ 9. However, we note that even if the court applied the wrong standard, because we apply a *de novo* review to the court's first-stage dismissal of a post-conviction petition, we may affirm on any basis supported by the record. See *People v. Dominguez*, 366 Ill. App. 3d 468, 473 (2006).

On *de novo* review, we apply the same analysis that a trial court would perform and our review is "completely independent" of the trial court's decision. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151. We now address defendant's contentions in turn.

¶ 28                                I.  Ineffective Assistance of Counsel

¶ 29    Defendant first argues that the trial court erred by finding he failed to state arguable claims of ineffective assistance of counsel based on counsel's failure to (1) investigate his case, (2) visit him in jail, (3) consult with him regarding the "legal dynamics of the case," (4) assert an affirmative defense of consent, (5) explain the difference between concurrent and consecutive sentences "which ultimately proved to be a critical factor in defendant's unintelligent guilty plea," and (6) explain the charged counts in the indictment. He also claimed he adequately asserted that counsel was ineffective for improperly persuading him to plead guilty by telling him " all the State needs is your confession to convict you, which they have, " despite knowing defendant "was vehemently contesting the so-called 'confession.' "

¶ 30    The right to effective assistance of counsel is a constitutional right, and violations of this right are cognizable under the Act. *People v. Jackson*, 205 Ill. 2d 247, 258-59 (2001). At first stage post-conviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (1) it is arguable that counsel's performance fell below an objective standard of reasonableness and (2) it is arguable that the defendant was prejudiced." *Hodges,* 234 Ill. 2d at 17 (citing *Strickland v. Washington,* 466 U.S. 668, 687-88 (1984)).

¶ 31    In the context of a guilty plea, an attorney's conduct is deficient if the attorney failed to ensure that the defendant's guilty plea was entered voluntarily and intelligently. *People v. Hall,* 217 Ill. 2d 324, 335 (2005). To establish the prejudice prong of an ineffective assistance of

counsel claim in these circumstances, the defendant must show there is a reasonable probability that, absent counsel's errors, the defendant would have pled not guilty and insisted on going to trial. *People v. Valdez*, 2016 IL 119860, ¶ 29 (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). The failure to satisfy either prong will defeat an ineffective assistance claim. *People v. Enis,* 194 Ill. 2d 361, 377 (2000).

¶ 32     In both his petition and on appeal, defendant makes conclusory allegations that counsel was ineffective for various reasons without providing further factual support for his claims. His claims, therefore, amount to nothing more than bare assertions. To the extent he claims he unintelligently pled guilty due to counsel's failure to explain the definition of consecutive sentences and counsel "improperly persuading" him to plead guilty, the record rebuts his contentions.

¶ 33     Due process requires that all pleas be knowing and voluntary, or, in other words, entered with full knowledge of the consequences. *People v. Whitfield*, 217 Ill. 2d 177, 200 (2005). Illinois Supreme Court Rule 402 requires that before accepting the plea, the court must admonish defendant regarding the nature of the charge, the minimum and maximum sentence, the right to plead not guilty, and the waiver of his right to a trial. Ill. S. Ct. R. 402(a) (eff. July 1, 2012); *People v. Marshall*, 381 Ill. App. 3d 724, 732 (2008). The court must also determine that the plea is voluntary by stating the terms of the plea agreement and defendant must accept those terms in open court. Ill. S. Ct. R. 402(b) (eff. July 1, 2012); *Marshall*, 381 Ill. App. 3d at 732.

¶ 34     The record shows defendant voluntarily and knowingly pled guilty after being extensively admonished, and the court found he pled guilty freely and voluntarily. Importantly, defendant does not explain how knowing the definition of consecutive sentences would have

resulted in him pleading not guilty or that had counsel adequately explained consecutive sentencing, he would have proceeded to trial. In any event, the record shows that the court thoroughly explained consecutive sentencing to defendant, who acknowledged understanding the explanation prior to entering his plea.

¶ 35    Further, defendant's claim that counsel's assertion that the State had "all it needed" to convict him does not support his conclusory allegation that counsel improperly persuaded him to plead guilty. He admitted on the record that he was not threatened or coerced into pleading guilty and that he was doing so of his own free will. Additionally, the State's factual basis revealed that the case against defendant was strong. Aside from defendant's confession, the State also had the victim's testimony and identification of defendant as the offender, and evidence of defendant's DNA from a vaginal swab collected from the victim. Counsel's honest assessment of the case cannot be the basis of an ineffectiveness claim. *People v. Buchanan*, 403 Ill. App 3d 600, 607 (2010). See also *People v. Wilson*, 295 Ill. App. 3d 228, 237 (1998) ("It is well settled in Illinois that an attorney's honest assessment of a defendant's case may not be the basis for holding a guilty plea involuntary.").

¶ 36    Defendant's remaining ineffectiveness claims relating to counsel's purported failure to investigate his case, consult with him prior to his plea, assert an affirmative defense, and explain the indictment similarly lack arguable merit for two reasons:  (1) it is well-established that a knowing and voluntary guilty plea waives all non-jurisdictional errors, including constitutional errors (*People v. Townsell*, 209 Ill. 2d 543, 545 (2004)), and (2) he has failed to set forth arguable claims that he was prejudiced by counsel's performance. *People v. Salas,* 2011 IL App (1st) 091880, ¶ 91 (if a claim of ineffectiveness may be disposed of due to lack of prejudice, this

court is not required to address whether counsel's performance was objectively reasonable). Defendant does not state what information further investigation into his case would have revealed or how consultations with him in jail regarding the legal dynamics of his case would have resulted in a different outcome. Critically, defendant does not claim that, had counsel consulted with him prior to his plea, investigated his case, or more thoroughly explained consecutive sentences, he would not have pled guilty and instead would have elected to proceed to trial.

¶ 37     Although he claims a pretrial conference would have made it "probable that [his] affirmative defense of consent would have proven viable," he does not provide any detail that would support that contention. This is especially so where the factual basis for his plea revealed the victim would have testified that defendant, armed with a gun, forced her behind a school and threatened to kill her before inserting his penis into her vagina. Defendant merely alleges, without specificity, that "there are a myriad of probable different outcomes favorable to defendant had defense counsel provided adequate representation," and, if counsel had consulted with him prior to trial, "a more informed strategy would have probably resulted with respect to a trial or guilty plea." This conclusory allegation is insufficient to demonstrate he was prejudiced by counsel's performance. While first-stage proceedings only require defendant to present a limited amount of detail, he is not "excused from providing any factual detail at all surrounding the alleged constitutional deprivation." *People v. Delton*, 227 Ill. 2d 247, 254 (2008). Rather, defendant must "set forth some facts which can be corroborated and are objective in nature." *Id.* at 255. Allegations, such as these, amounting to nothing more than broad conclusory allegations of ineffective assistance of counsel are not allowed under the Act. See

*Delton,* 227 Ill. 2d at 258 (citing *People v. Blair,* 215 Ill. 2d at 427, 453 (2005)). Accordingly, his assertions regarding counsel's performance fail to give rise to a gist of constitutional claims of ineffective assistance.

¶ 38                                    II.  Improper Admonishments

¶ 39    Defendant next contends that the trial court improperly admonished him under Illinois Supreme Court Rule 402. He also claims that the court "was in violation of the U.S. and Illinois Constitutions" by providing an unclear response to his question regarding consecutive sentences and stating he faced "far more than 24 years" imprisonment if he proceeded to trial. Defendant further maintains that the court improperly influenced him to plead guilty by "praising the State and Defense Counsel" and referencing "other defendants who have suffered bad fortune by virtue of their refusal to plead guilty."

¶ 40    As previously mentioned, the Act provides a means for defendants to challenge convictions based on constitutional violations. *Beaman*, 229 Ill. 2d at 71. Although defendant claims the trial court's allegedly improper admonishments were constitutional violations, he cites no authority to support his claim. Instead, defendant's main contention is that the court's admonishments failed to comply with Rule 402, which is not a constitutional violation cognizable under the Act. See *People v. Pate*, 30 Ill. App. 3d 9, 12 (1975) (Under the Act, "[a] violation of a statute or rule of procedure which does not constitute a constitutional right is not to be considered. Also, a conviction will not be reversed for erroneous admonishments under Rule 402 if the petitioner does not allege that his guilty plea was not voluntarily entered into and if he does not show in what way he has been harmed.") (Internal citations omitted).

¶ 41 Moreover, the record rebuts defendant's contention because it reflects that the trial court properly admonished him pursuant to Rule 402 and that his plea was knowing and voluntary. Specifically, the court extensively admonished defendant regarding the nature of the charge, the minimum and maximum sentence for which defendant was eligible, his right to plead not guilty, and the waiver of his right to trial. Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The court also determined defendant pled guilty voluntarily in exchange for a 22-year sentence. Ill. S. Ct. R. 402(b) (eff. July 1, 2012). Defendant at several points throughout the proceeding indicated he understood the admonishments. In short, nothing in the record suggests defendant's plea was anything other than knowing and voluntary and the record affirmatively rebuts his contention that the court's admonishments were insufficient. *Whitfield*, 217 Ill. 2d at 200 (due process requires that all pleas be knowing and voluntary, or, in other words, entered with full knowledge of the consequences).

¶ 42 Although defendant takes issue with the trial court's explanation of consecutive sentences, he does not state how that explanation failed to comply with Rule 402 or how it rendered his plea involuntary. After defendant asked about consecutive sentencing, the court explained that he faced a minimum of 63 years' imprisonment if he was convicted of all of the offenses based on the sentencing laws and firearm enhancements. Defendant was apparently satisfied with the court's explanation and requested, and received, time to consult with his attorney. Further, although at one point the court stated defendant "could end up with far more than 24 years" imprisonment with regard to the State's previous plea offer, it also admonished him that he faced a sentence of 21 to 45 years on the count to which he pled guilty. Thus, defendant's claim that he was improperly admonished is rebutted by the record and the court did

not err in summarily dismissing his petition. *Hodges,* 234 Ill. 2d at 11-12 (A petition may be summarily dismissed as "frivolous or patently without merit only if the petition has no arguable basis either in law or in fact"); *Brown,* 236 Ill. 2d at 185 (A claim has no arguable basis when it is based on an indisputably meritless legal theory, such as one completely contradicted by the record).

¶ 43 Finally, as the State points out, the court's statement "praising" the State and defense counsel came after defendant pled guilty. Thus, there is nothing to show that the court influenced defendant into pleading guilty.

¶ 44 In sum, defendant's post-conviction petition alleging ineffective assistance of plea counsel and improper trial court admonishments failed to state the gist of constitutional claims. We therefore affirm the trial court's summary dismissal of his petition.

¶ 45 For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 46 Affirmed.