2020 IL App (1st) 162506-U

FIFTH DIVISION
Order filed: February 14, 2020

No. 1-16-2506

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 4659 |
| | ) | |
| PAUL MANNING, | ) | Honorable |
| | ) | Colleen Ann Hyland, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HOFFMAN delivered the judgment of the court.
Justices Rochford and Delort concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We reverse that part of the circuit court's order granting the State's motion to dismiss the defendant's postconviction petition at the second stage where the defendant made a substantial showing that his counsel was ineffective during plea negotiations and remand for a third-stage evidentiary hearing.

¶ 2    The defendant, Paul Manning, appeals from an order of the circuit court of Cook County that granted the State's motion to dismiss his petition for relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)) at the second stage of proceedings. On

appeal, he argues that he made a substantial showing that his counsel was ineffective during plea negotiations and during sentencing. For the reasons that follow, we reverse and remand for a third-stage evidentiary hearing.

¶ 3     The defendant was charged with attempted first degree murder, aggravated battery with a firearm, and six counts of aggravated kidnapping, stemming from an incident involving his former girlfriend, Sandra Weeks. Relevant to this appeal, the attempted first degree murder charge alleged that the defendant "shot [Weeks] about the body with a firearm, which constituted a substantial step towards the commission of first degree murder" (720 ILCS 5/8-4; 5/9-1 (West 2008)) and the relevant aggravated kidnapping count alleged that he kidnapped Weeks and, during the commission of the offense, "he personally discharged a firearm that proximately caused great bodily harm" to her (720 ILCS 5/10-2(a)(8) (2008)).

¶ 4     On April 29, 2009, defense counsel indicated to the circuit court that the State had made a plea offer to the defendant and he was "not interested in the offer." The State's offer was 45 years' imprisonment in exchange for the defendant pleading guilty to one count of attempted first degree murder. Defense counsel further told the circuit court that he did not "expect a resolution on this." The circuit court asked defense counsel if he had "gone over with [the defendant] all of the potential penalties that he faces," noting that the charged offenses "are not only mandatorily consecutive to each other, but also include add on penalties for a gun." Defense counsel responded that the defendant was "aware of the sentencing enhancements on this case." The circuit court then addressed the defendant and made the following admonishments:

"You're charged with the offenses of attempt first degree murder, as well as aggravated kidnapping. They are both Class X felonies, and they are not probationable. Further, you

are charged with committing those offenses while being armed with a firearm. The underlying charges of attempt first degree murder and aggravated kidnapping are punishable from 6 to 30 years in the Illinois Department of Corrections, with an additional 15 years for each offense. If there is a finding of great bodily harm, then your sentences would have to be served consecutively. *** The minimum possible sentence for both of those offenses is 21 years in the Illinois Department of Corrections, and if they were to be served consecutively, then the minimum sentence would be 42 years."

The circuit court asked the defendant if he understood, and he responded that he did.

¶ 5    On January 15, 2010, defense counsel indicated that the defendant "was desirous of a conference," whereupon the circuit court admonished the defendant, and a 402 conference was held. Following the conference, the circuit court recommended a sentence of 40 years' imprisonment in exchange for the defendant pleading guilty to one count of attempted first degree murder. On April 16, 2010, the defendant rejected the circuit court's offer.

¶ 6    On June 22, 2010, both sides answered ready for trial. The State entered a *nolle prosequi* on all but one of the counts of aggravated kidnapping and amended the attempted first degree murder charge to state that the defendant "personally discharged a firearm and shot [Weeks] which proximately caused great bodily harm." The state also requested that the defendant be admonished as follows:

"[T]he charge we would be proceeding on, Judge, is the Class X attempt murder, which carries a sentence range of 6 to 30 years, plus 25 to natural life extension given the fact that he shot the victim with a handgun, bringing his minimum sentencing range on that attempt murder to 31 years to a maximum range of natural life at 85 percent.

That charge would run consecutive to the aggravated kidnapping, which is also a Class X felony, which carries a 6 to 30 year sentence range, plus 25 years [sic] natural life extension for the use of a handgun, which gives a minimum sentencing range on that count of 31 years to natural life.

\*\*\*

Judge, we would just ask that the Defendant be admonished that that sentencing range, if convicted, is a minimum of 62 years to a maximum of natural life as he is currently charged \*\*\*.

Judge, there was a conference in this case. There has been a prior offer as well made to the Defendant of 45 years Illinois Department of Corrections.

We would have only been proceeding on one count which would save him some time off of his sentence. The Court in a 402 conference had offered 40 years Illinois Department of Corrections on the one count, well below the minimum range that he is currently facing if convicted."

The circuit court asked the defendant if he "understood that," and he responded that he did. The case proceeded to jury selection later that day, and the trial commenced on the following morning.

¶ 7    Having set forth the facts adduced at the defendant's trial on his direct appeal (*People v. Manning*, 2012 IL App (1st) 102860-U, ¶¶ 3-7), we summarize the evidence presented only to the extent necessary to resolve the issues on appeal. At trial, Weeks testified that she parked her car in front of her apartment after work. The defendant, her ex-boyfriend, appeared with a gun and tapped the car window. She refused to open the door and he proceeded to break the window. She dialed 9-1-1 and the defendant shot her several times through the windshield. Weeks sustained wounds

to both arms, her chest, and her hip. The defendant then entered Weeks' car, with her wounded inside, and drove away. Weeks asked the defendant to take her to the hospital and he told her that he would only do so if she attributed her wounds to another shooter. Weeks lost consciousness and awoke to see that her car was parked in front of the home of the defendant's aunt, but he was gone. The defendant returned to the car five minutes later and drove her to the hospital. The defendant did not present evidence in his defense. Following arguments, the jury returned a verdict finding the defendant guilty on all three counts.

¶ 8     At the sentencing hearing, the State offered evidence in aggravation regarding two incidents where Weeks called the police to report that the defendant was outside of her home and refused to leave. One of those incidents occurred two days before the defendant shot Weeks. The State noted that the defendant has "proven he is violent" and described him as a "stalker." The State also recounted his criminal history. The State asked for a sentence at the high end of the sentencing range of 37 to 85 years' imprisonment. In mitigation, defense counsel argued that the defendant's prior criminal history included only "drug cases" and did not show "violent tendencies." Defense counsel asked for a sentence in the low end of the statutory range, noting that the defendant was 42 years old and would be in his 70s when released after serving a minimum sentence.

¶ 9     The circuit court merged the defendant's conviction for aggravated battery with a firearm with the attempted murder conviction. It then stated that it considered "the factors" it heard in aggravation and mitigation and the presentence investigation (PSI) report before sentencing the defendant to 30 years' imprisonment for attempted first degree murder, plus 25 years for personally discharging a firearm during the offense that caused great bodily harm. On the aggravated

kidnaping charge, the court sentenced the defendant to 30 years' imprisonment, plus 25 years for personally discharging a firearm that caused great bodily harm. The circuit court noted that the jury found that Weeks suffered great bodily injury and, therefore the defendant was required to serve his sentences consecutively for an aggregate sentence of 110 years' imprisonment.

¶ 10    The defendant filed a motion to reconsider his sentence, which the circuit court granted in part. Specifically, the circuit court determined that it erred by sentencing the defendant to a 25-year firearm enhancement for the aggravated kidnaping count because he personally discharged the firearm prior to committing the offense. The circuit court vacated that enhancement and sentenced the defendant to a total of 85 years' imprisonment.

¶ 11    On appeal, the defendant raised the following arguments: (1) the State failed to prove beyond a reasonable doubt that he intended to kill Weeks; (2) the State failed to prove beyond a reasonable doubt that he intended to secretly confine Weeks; (3) his conviction for aggravated kidnapping should be reduced to kidnapping because he did not discharge a firearm during the kidnapping; and (4) his trial counsel was ineffective for failing to present a closing argument. *People v. Manning*, 2012 IL App (1st) 102860-U. We affirmed the defendant's convictions and sentences. *Id.*

¶ 12    On April 24, 2013, the defendant filed a *pro se* postconviction petition, arguing the following: (1) the circuit court abused its discretion in sentencing him to 55 years' imprisonment for attempted murder because it failed to consider mitigating factors and found severe bodily injury; (2) his counsel was ineffective for failing to call his mother to testify in mitigation; (3) his counsel was ineffective for filing an inadequate motion for new trial; (4) his counsel was ineffective for failing to file a motion *in limine*; (5) his counsel was ineffective for failing to

investigate police reports and witness statements; (6) the Assistant State's Attorney falsely argued that he was a "violent person" in aggravation at his sentencing hearing; (7) the attempted first degree murder sentencing statute is unconstitutional; and (8) he was not proven guilty of attempted murder beyond a reasonable doubt.

¶ 13    The defendant subsequently hired postconviction counsel and filed a supplemental postconviction petition on October 24, 2014. Therein, the defendant argued, *inter alia*, that his counsel was ineffective for failing to ensure that he knowingly rejected the plea offer and for failing to present mitigation witnesses at his sentencing hearing. Attached to the supplemental petition were affidavits from the defendant and members of his family. In his affidavit, the defendant stated the following:

> "My attorney never talked to me about a sentencing range for the charges I faced. He did keep trying to get me to plead guilty, but it didn't seem like a good deal to take the sentence the State offered when I thought I could get a lot less time. The only thing I knew about that was what the judge told me. If I knew the minimum sentence I could have gotten if I want [sic] to trial was 62 years or 47 years in prison, I would have taken the offer of 40 years given by the judge."

Regarding his sentencing hearing, he further averred that his counsel "did not ask [him] about witnesses that could testify at his sentencing hearing. But[,] I had already told him about my kids ***. I had a very close relationship with my children, too, but he didn't ask me about being their dad or what kind of dad I was to them." The defendant also attached affidavits from his two adult children and his sister, stating that they were willing to testify that the defendant was a good father and that his counsel never spoke to them about testifying.

¶ 14 On February 27, 2015, the circuit court advanced the defendant's petition to the second stage. The State subsequently filed a motion to dismiss the defendant's postconviction petition.

¶ 15 On July 15, 2016, the circuit court granted the State's motion to dismiss, finding that the ineffective assistance claims were forfeited because the defendant did not raise them on direct appeal. The circuit court further found that, with regard to the defendant's ineffective assistance of counsel during plea negotiations claim, the defendant failed to make a substantial showing of a constitutional violation because he did not indicate he wished to re-open plea negotiations when he was properly admonished the day of trial. This appeal followed.

¶ 16 On appeal, the defendant argues that he made a substantial showing that his counsel was ineffective in the following two ways: (1) for failing to inform him during plea negotiations of the sentencing ranges he faced if he went to trial; and (2) failing to investigate and present mitigation witnesses during sentencing.

¶ 17 The Act provides a procedural mechanism through which a petitioner may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 (West 2012). At the first stage of a postconviction proceeding, the circuit court independently reviews the defendant's petition, taking the allegations as true, and determines if it is frivolous or patently without merit. *People v. Hodges*, 234 Ill. 2d 1, 10 (2009). If the postconviction petition is not summarily dismissed, as here, it advances to the second stage, where the State may file a motion to dismiss the petition and the postconviction court must determine whether the petition and any accompanying documents make a substantial showing of a constitutional violation. *Id.* at 10-11 n. 3. At the second stage of proceedings, the postconviction court takes "all well-pleaded facts that are not positively rebutted by the trial record" as true.

*People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). If the petition fails to make a substantial showing of a constitutional violation, it is dismissed; if such a showing is made, the postconviction petition advances to the third stage where the court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2012).

¶ 18    The " 'substantial showing' of a constitutional violation that must be made at the second stage [citation] is a measure of the legal sufficiency of the petition's well-pled allegations of a constitutional violation, which if proven at an evidentiary hearing, would entitle petitioner to relief." (Emphasis in original.) *People v. Domagala*, 2013 IL 113688, ¶ 35. Although the defendant "bears the burden of making a substantial showing of a constitutional violation" (*id.*), a second-stage inquiry into "whether a post-conviction petition contains sufficient allegations of constitutional deprivations does not require the trial court to engage in any fact-finding or credibility determinations" (*People v. Childress*, 191 Ill. 2d 168, 174 (2000)). Our review is *de novo*. *People v. Johnson*, 2017 IL 120310, ¶ 14.

¶ 19    Both the United States and Illinois constitutions guarantee a criminal defendant the right to effective assistance of counsel. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; *People v. Hale*, 2013 IL 113140, ¶ 15. To support a claim of ineffective assistance of counsel at the second stage of postconviction proceedings, a defendant must make a substantial showing that (1) counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result would have been different. *People v. Hall*, 217 Ill. 2d 324, 334-35 (2005) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)); *People v. Groszek*, 2016 IL App (3d) 140455, ¶ 13. Failure to establish either prong of the

*Strickland* test precludes a finding of ineffective assistance of counsel. See *People v. Henderson*, 2013 IL 114040, ¶ 11.

¶ 20    The defendant raises two arguments alleging that his counsel was ineffective. We turn first to the defendant's contention that his counsel was ineffective for failing to investigate and call several mitigating witnesses during his sentencing hearing. To succeed on a claim of ineffective assistance of counsel during sentencing, a defendant must show that counsel's performance fell below minimal professional standards and that a reasonable probability exists that the defendant's sentence was affected. *People v. Sharp*, 2015 IL App (1st) 130438, ¶ 122.

¶ 21    In the instant case, the defendant contends that his counsel provided ineffective assistance during his sentencing hearing by failing to present in mitigation three character witnesses—his sister and his two adult children. Specifically, the defendant averred that his counsel "did not ask [him] about witnesses that could testify at his sentencing hearing. But[,] I had already told him about my kids ***. I had a very close relationship with my children, too, but he didn't ask me about being their dad or what kind of dad I was to them." The defendant's two adult children averred that the defendant was a good father and that they were willing to testify to that fact, however, defense counsel did not contact either of them. The defendant's sister averred that defense counsel never contacted her, but she was willing to testify that the defendant was a good father who supported his children both financially and emotionally.

¶ 22    To begin, we note that the defendant does not contend that he ever informed his counsel of his sister and her willingness to testify. Counsel cannot be deemed ineffective for failing to investigate witnesses that he did not know existed. As we have previously stated, "Effective counsel is not required to be clairvoyant." *People v. Vasser*, 331 Ill. App. 3d 675, 685 (2002).

¶ 23    That said, even assuming any deficiency in counsel's performance, the defendant still must demonstrate prejudice to sustain the claim. *Simon*, 2014 IL App (1st) 130567, ¶ 71. In the context of a sentencing hearing, prejudice must be assessed based on the totality of the evidence, including both potential evidence in mitigation and the evidence in aggravation. *Id.* ¶ 72.

¶ 24    To that end, even taking as true the defendant's allegation regarding counsel's knowledge of three of the character witnesses, we find that the defendant cannot demonstrate prejudice as a result of the failure to call those witnesses. The record demonstrates that there was considerable evidence in aggravation, including the defendant's criminal history and two incidents where Weeks called the police to remove the defendant from outside of her home, the last of which occurred two days before he shot her. The defense counsel in mitigation refuted the State's characterization of the defendant as a violent "stalker" by emphasizing that his criminal history was made up almost entirely of non-violent drug offenses. Counsel advocated for a minimum sentence, noting that, given the defendant's age, he would be in his seventies when released if given a minimum sentence. Furthermore, the testimony from the three proposed witnesses was arguably cumulative, as the defendant's PSI report noted that he "is the father of two children with whom he has a good relationship." Given the totality of the mitigating and aggravating evidence before the court, we cannot say that the testimony of the three proposed character witnesses regarding the quality of the defendant's parenting would have arguably altered the outcome of the sentencing proceeding. Thus, defendant has failed to make a substantial showing that his counsel was ineffective for failing to call three witnesses at sentencing.

¶ 25    The defendant next argues that he made a substantial showing that his counsel was ineffective during plea negotiations for failing to inform him of the range of sentences he faced.

¶ 26    Although a defendant has no constitutional right to plea bargain, if the State chooses to bargain, the defendant has the right to the effective assistance of counsel in negotiations with the State. *People v. Curry*, 178 Ill. 2d 509, 517 (1997). Moreover, the right to the effective assistance of counsel extends to the defendant's decision to reject a plea offer, even if the defendant subsequently receives a fair trial. *Curry*, 178 Ill. 2d at 517. Whether to accept or reject a plea offer is a decision only the defendant can make. *People v. Blommaert*, 237 Ill. App. 3d 811, 816 (1992). For this decision to be knowing and voluntary, defense counsel must fully inform himself of the facts and the law relevant to the State's offer and candidly advise his client as to the direct consequences of accepting or rejecting the offer. *Blommaert*, 237 Ill. App. 3d at 817. Part of this obligation is satisfied when defense counsel accurately informs his client of the maximum and minimum sentences that can be imposed for the offenses charged by the State. *Blommaert*, 237 Ill. App. 3d at 817.

¶ 27    The defendant argues that his counsel was ineffective during plea negotiations for failing to discuss with him the sentencing range for the charges he faced. According to the defendant, had he been so informed, he would have accepted the circuit court's offer of a 40-year prison term. The defendant further argues that the record supports his contention insofar as it reflects that his counsel did not correct the circuit court when it erroneously admonished him that he was facing a minimum of 42 years' imprisonment. The defendant also argues that the disparity between the plea offer he rejected and the actual sentence he received establishes that he suffered prejudice as a result of counsel's ineffectiveness.

¶ 28    The State responds that the record positively rebuts the defendant's claims. Specifically, the State argues that the defendant did not rely on the circuit court's erroneous admonishments

when deciding to reject the State's plea offer because the record reflects that the defendant's counsel informed the court that he rejected the State's offer prior to the erroneous admonishments. The State further argues that the record establishes that the defendant's counsel told the circuit court he discussed with the defendant his possible sentence, including the firearm enhancements, prior to the defendant rejecting the State's offer. Lastly, the State contends that the defendant's failure to express surprise when he was correctly admonished regarding his sentencing range on the day of trial positively rebuts his claim.

¶ 29    The defendant counters that his counsel's statement to the circuit court that he "discussed the sentencing enhancements on this case" with the defendant does not positively rebut his well-pleaded fact, but, rather, reflects a disputed fact that is best resolved through an evidentiary hearing. We agree with the defendant.

¶ 30    After reviewing the record, we conclude that it does not positively rebut the defendant's contention that his counsel "never talked to [him] about a sentencing range for the charges that [he] faced." Rather, the record reveals that defense counsel assured the circuit court that "we have spoken of the enhancements, Judge. He is aware of the sentencing enhancements on this case." This statement indicates only that defense counsel informed the defendant of possible sentencing enhancements, it does not indicate that defense counsel informed the defendant of the possible sentencing ranges, such as minimum and maximum penalties. Nor does defense counsel's statement indicate whether he informed the defendant that he was facing 15 or 25-year enhancements. This distinction is significant as the record reflects that the circuit court then proceeded to erroneously admonish the defendant that he was facing a minimum of 42 years'

imprisonment due to 15-year sentencing enhancements when the defendant's minimum sentence was 62 years' imprisonment due to 25-year sentencing enhancements.

¶ 31    Moreover, the defendant's rejection of the State's plea offer of 45 years' imprisonment before the erroneous admonishments does not positively rebut the defendant's claim because the defendant alleged that, if he had known the sentencing range that he was facing, he would have accepted the circuit court's offer, not the State's earlier offer. At no time prior to the defendant's rejection of the circuit court's offer does the record reflect that the defendant was informed of the correct sentencing range for the charged offenses. In fact, the record establishes that the defendant was not informed that the minimum sentence he could receive is 62 years' imprisonment until the day of his trial. Consequently, the defendant's rejection of the State's offer does not positively rebut his claim that he would have accepted the court's offer if he had been properly informed.

¶ 32    We also find the State's argument that the defendant's claim is positively rebutted by his failure to express surprise or object when the court properly admonished him on the day of trial to be unavailing. When a defendant's claims are based upon matters outside the record, such as here, our supreme court has emphasized that "it is not the intent of the [A]ct that [such] claims be adjudicated on the pleadings." *People v. Coleman*, 183 Ill. 2d 366, 382 (1998) (quoting *People v. Airmers*, 34 Ill. 2d 222, 226 (1966)). Rather, the function of the pleadings in a proceeding under the Act "is to determine whether the [defendant] is entitled to a hearing." *Airmers*, 34 Ill. 2d at 226. "Therefore, the dismissal of a postconviction petition is warranted only when the petition's allegations of fact—liberally construed in favor of the petitioner and in light of the original trial record—fail to make a substantial showing of imprisonment in violation of the state or federal constitution." *Coleman*, 183 Ill. 2d at 382. With these principles in mind, we conclude that the

defendant's failure to object on the record regarding the court's inconsistent admonishments does not positively rebut his claim and is an issue to be explored at an evidentiary hearing.

¶ 33 Thus, taking all well-pled allegations as true unless positively rebutted by the record, as we must at the second-stage of postconviction proceedings, we conclude that the defendant has made a substantial showing that his counsel was deficient for failing to properly inform the defendant of the sentencing ranges he faced. *Blommaert*, 237 Ill. App. 3d at 817 (finding the defendant's counsel ineffective for incorrectly informing the defendant of the possible range of sentences).

¶ 34 Having determined that the defendant's petition made a substantial showing that his counsel's performance was deficient, we also conclude that the defendant has made a substantial showing that he suffered prejudice from that deficient representation. To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In other words, the defendant must establish that there is a reasonable probability that, absent his attorney's deficient advice, he would have accepted the plea offer. *Id.* at 531. This showing of prejudice must encompass more than a defendant's own "subjective, self-serving" testimony. (Internal quotations omitted.) *Id.* Rather, there must be "independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice," and not on other considerations. *Curry*, 178 Ill. 2d at 532. The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice. *People v. Hale*, 2013 IL 113140, ¶ 18 (citing *Curry*, 178 Ill. 2d at 533). In contrast, a

defendant's claim of prejudice is undermined if the record demonstrates that he "clearly and expressly" professed his innocence and indicated a desire for trial. *Hale*, 2013 IL 113140 at ¶ 26.

¶ 35 Here, the defendant was sentenced to 85 years' imprisonment and rejected a pretrial offer of 40 years' imprisonment from the circuit court after a Rule 402 conference. The significant disparity between the pretrial offer and his sentence supports the defendant's contention that, if he had known the sentencing range he was facing, he would have accepted the plea bargain. Additionally, the record does establish that the defendant was erroneously admonished by the circuit court that he faced a minimum sentence of 42 years' imprisonment in the months before he rejected the circuit court's offer of 40 years' imprisonment. We also note that, unlike in *Hale*, the defendant did not "clearly and expressly" profess his innocence, indicate a desire for trial, or advance an innocence theory at trial. See *Hale*, 2013 IL 113140 at ¶ 26. In sum, we conclude the defendant made a substantial showing that, but for his counsel's ineffective performance, he would have accepted the plea offer.

¶ 36 The State nevertheless argues that the defendant did indicate a desire for trial. In support, the State points to comments made by the defendant during interviews with a doctor to determine whether he was fit to stand trial. We decline to consider this evidence as statements made by a defendant during the course of examination "shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged or intoxicated condition, in which case they shall be admissible only on the issue of whether he was insane, drugged, or intoxicated." 725 ILCS 5/104-14 (West 2008).

¶ 37 For the reasons stated, we reverse the circuit court's order granting the State's motion to dismiss the defendant's postconviction petition at the second stage and we remand the matter to

the circuit court for a third-stage evidentiary hearing on his claim that his counsel provided ineffective assistance for failing to inform him of the range of sentences he faced during plea negotiations.

¶ 38    Reversed; cause remanded with directions.