2024 IL App (1st) 230882-U

FOURTH DIVISION
Order filed: November 27, 2024

No. 1-23-0882

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 08 CR 4659 |
| | ) | |
| PAUL MANNING, | ) | Honorable |
| | ) | Margaret M. Ogarek, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court.
Justices Ocasio and Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*: Circuit court order denying the defendant's petition for postconviction relief following a third-stage evidentiary hearing is affirmed when the defendant's trial counsel refuted the defendant's allegations, the court found counsel to have been credible, and the defendant failed to demonstrate that the court's credibility finding was manifestly erroneous.

¶ 2    The defendant, Paul Manning, appeals from the denial of his petition for postconviction relief following a third-stage evidentiary hearing. He claims that his trial counsel rendered ineffective assistance during plea bargaining by failing to correct the trial court's erroneous

admonishment regarding his minimum potential sentence. We affirm the denial of the defendant's petition because trial counsel refuted the defendant's allegations by testifying that he discussed the applicable sentencing ranges and the possibility of consecutive sentences, the circuit court found counsel's testimony credible, and we see no basis to disturb the court's credibility finding.

¶ 3 In 2008, the defendant was indicted on 20 charges for shooting and abducting his ex-girlfriend, Sandra Weeks. These charges included, among others, attempted first-degree murder with a firearm, aggravated battery with a firearm, aggravated kidnapping with a firearm, and aggravated vehicular hijacking with a firearm. During pretrial proceedings, the State offered the defendant a sentence of 45 years' imprisonment in exchange for a guilty plea to a single count of attempted first-degree murder.

¶ 4 When the defendant's trial counsel, Tod Urban, informed the court at a hearing on April 29, 2009, that the defendant was "not interested" in the State's offer, the court asked whether Urban had "gone over with [the defendant] all of the potential penalties that he faces because he's charged with the offenses of attempt first degree murder, as well as aggravated kidnapping with a firearm, which are not only mandatorily consecutive to each other, but also include add on penalties for the gun?" Urban responded, "We have spoken of the enhancements. Judge. He is aware of the sentencing enhancements on this case." The court then gave the defendant the following admonishment:

"You're charged with the offenses of attempt first degree murder, as well as aggravated kidnapping. They are both Class X Felonies, and they are not probationable. Further, you are charged with committing those offenses while being armed with a firearm. The underlying charges of attempt first degree murder and aggravated kidnapping are

punishable from 6 to 30 years in the Illinois Department of Corrections, with an additional 15 years for each offense. If there is a finding of great bodily harm, then your sentences would have to be served consecutively. And by that I mean you would finish serving your sentence on the attempt first degree murder with a firearm offense before you begin serving your sentence for the aggravated kidnapping with a firearm offense. *The minimum possible sentence for both of those offenses is 21 years in the Illinois Department of Corrections, and if they were served consecutively then the minimum sentence would be 42 years*. Do you understand?" (Emphasis added.)

The defendant replied that he understood.

¶ 5    On January 15, 2010, the court held a Supreme Court Rule 402 conference on the request of the defendant, during which the court offered the defendant a sentence of 40 years' imprisonment for a guilty plea to one count of attempted first-degree murder. On April 16, 2010, the defendant rejected the court's offer.

¶ 6    On June 22, 2010, the day before trial, the State dropped all but three of the charges against the defendant and proceeded to trial on one count each of attempted first-degree murder, aggravated kidnapping, and aggravated battery. The State also made a record of the sentencing range for those remaining charges:

"[T]he charge we would be proceeding on, Judge, is the Class X attempt murder, which carries a sentence range of 6 to 30 years, plus a 25-to-natural-life extension given the fact that he shot the victim with a handgun, bringing his minimum sentencing range on that attempt murder to 31 years to a maximum range of natural life at 85 percent.

That charge would run consecutive to the aggravated kidnapping, which is also a Class X felony, which carries a 6- to 30-year sentence range, plus 25-years-[to]-natural-life extension for the use of a handgun, which gives him a minimum sentencing range on that count of 31 years to natural life.

Then, there is also an aggravated battery with a firearm, also a Class X felony, at 85 percent, which carries a sentencing range of 6 to 30 years.

Judge, we would just ask that the Defendant be admonished that that sentencing range, if convicted, is a minimum of 62 years to a maximum of natural life as he is currently charged ***."

When asked whether he understood, the defendant responded that he did.

¶ 7 Following a jury trial, the defendant was convicted of all charges. At sentencing, the court merged the defendant's aggravated battery conviction with the conviction for attempted murder. It then imposed identical sentences for both the attempted murder and aggravated kidnapping convictions: 30 years' imprisonment, plus 25 years for personally discharging a firearm during the offense, causing great bodily harm. The court further found that Weeks suffered severe bodily injury, mandating that the sentences be served consecutively and resulting in an aggregate sentence of 110 years' imprisonment.

¶ 8 The defendant filed a boilerplate motion to reconsider sentence alleging that his sentence was excessive and violated his right to due process. The circuit court granted the motion in part, apparently on grounds that the court itself had discovered, with the court explaining in an oral ruling that the firearm enhancement for the aggravated kidnapping conviction was improper because the defendant had already shot the victim prior to the commission of the kidnapping.

Accordingly, it vacated the firearm enhancement for that offense, leaving the defendant with a 30-year sentence for aggravated kidnapping and an 85-year cumulative sentence. We affirmed the convictions and sentences on direct appeal. See *People v. Manning*, 2012 IL App (1st) 102860-U (*Manning I*) (unpublished order under Supreme Court Rule 23).

¶ 9       In April 2013, the defendant filed a *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)), raising seven claims for relief, none of which are relevant to the present appeal. The defendant then filed a supplemental petition through counsel in which he added two claims, including, in relevant part, a claim that trial counsel rendered ineffective assistance by failing to ensure that he was aware of his potential sentencing range after the trial court misstated his minimum potential sentence during its admonishment on April 29, 2009, making his decision to reject the court's plea offer unknowing and uninformed. He alleged that his counsel "never talked to [him] about a sentencing range for the charges that [he] faced" and that he based his decision to reject the court's plea offer solely on what the court had told him about his potential sentencing exposure. That claim is the subject of the present appeal.

¶ 10     The circuit court advanced the defendant's petition to the second stage, before eventually dismissing it on a motion from the State. On appeal, we reversed the court's decision. We concluded that trial counsel's statement on April 29, 2009, that he had "spoken of the enhancements" with the defendant did not positively rebut the defendant's assertion that counsel had not informed him of his potential sentencing range because it "indicates only that defense counsel informed the defendant of possible sentencing enhancements, it does not indicate that defense counsel informed the defendant of the possible sentencing ranges, such as minimum and

maximum penalties." See *People v. Manning*, 2020 IL App (1st) 162506-U, ¶ 30 (*Manning II*) (unpublished order under Supreme Court Rule 23). We also rejected the State's argument that the defendant's claim was rebutted by the fact that he had rejected the State's offer prior to the court's erroneous admonishment. *Id.* ¶ 31. Rather, we observed that the defendant had alleged he would have accepted *the court's* 40-year offer if had been properly advised that he faced a minimum sentence of 62 years, and "[a]t no time prior to the defendant's rejection of the circuit court's offer does the record reflect that the defendant was informed of the correct sentencing range for the charged offenses." *Id.* We also concluded that the defendant had sufficiently alleged prejudice based on the disparity between the sentence he ultimately received and the sentences offered by the State and the trial court, and due to the fact that he "did not 'clearly and expressly' profess his innocence, indicate a desire for trial, or advance an innocence theory at trial." *Id.* ¶ 35 (quoting *People v. Hale*, 2013 IL 113140, ¶ 26). Accordingly, we remanded for an evidentiary hearing on the defendant's claim that counsel provided ineffective assistance by failing to inform him during plea negotiations of the range of sentences he faced. *Id.* ¶ 37.

¶ 11     At the hearing on the defendant's petition, the court heard testimony from the defendant and his trial counsel, Tod Urban. The defendant testified that Urban represented him throughout his trial proceedings. According to the defendant, during the course of that representation, Urban only visited with him at the jail on two occasions for about five minutes each. During the first meeting in September 2009, Urban discussed the defendant participating in a BCX interview regarding a potential insanity plea and did not discuss the case, a plea offer, or the defendant's sentencing range. According to the defendant, during the second meeting in the week before his June 2010 trial, Urban told him that the State was offering 40 years, but Urban did not explain the

minimum or maximum sentences that he faced. The defendant testified that Urban also met with him several times in the courthouse lockup on the day of various court appearances, but never discussed the sentencing ranges.

¶ 12    The defendant recalled that on April 29, 2010, the trial court had admonished him on "attempt murder, aggravated kidnapping, and the discharge of a firearm. She said that the sentence ranges from 6 years to 21 for each charge which would be 42 if they ran them all consecutive." On the day of trial, the State informed the defendant that the minimum sentence for each charge was 31 years. When asked whether he knew which admonition was correct, the defendant responded, "I was going on what the original sentence [the trial judge] had told me at first. The State had corrected her really like the day before trial. Trying to make sure I understood what was going on after they *nolle pros'd* everything." According to the defendant, Urban never explained what the State needed to prove for the 25-year enhancement to apply. When asked whether he would have taken the court's 40-year offer had he known that he was facing a minimum of 62 years, the defendant responded, "Yes, I would. I wound up getting 110 years."

¶ 13    On cross-examination, the defendant was asked whether he would have accepted a plea deal for 42 years, the sentence that the trial court incorrectly admonished him was the minimum potential sentence, and the defendant responded that he would not. However, he later stated that, after being correctly admonished regarding the potential sentencing range before trial, "I would have [taken] the 40 years, yes, if I would have known I was facing all that time at the end, yes." The defendant also testified that he first learned about the State's 40-year offer when Urban told him about it during a visit to the jail on April 16, 2010.

¶ 14     Urban testified that he had practiced criminal defense from 1984 to 2010 and had handled countless cases involving violent crime. Urban explained that, as a general matter, when the State presents a plea offer, he has an obligation to present it to his client. When he does so, he also explains the sentencing ranges for the defendant's charges. Urban was aware that there is a 25-year sentencing enhancement for personally discharging a weapon and proximately causing great bodily harm. He has had to explain that enhancement to clients many times.

¶ 15     Urban remembered representing the defendant, and he was able to identify him in court. Urban did not have any files pertaining to the defendant's case because it was an old case, and he routinely purges files after nine or ten years. Urban stated that, when he was hired to represent a client, the first thing he would do was visit them in jail. Although he did not specifically remember visiting the defendant in jail, he testified that he was "sure" that he conducted such a visit in this case.

¶ 16     Urban recalled that the State had made an offer of 45 years for attempted murder with a firearm. He did not specifically remember where he discussed the offer with the defendant, but rather stated, "I'm guessing it was at the jail. I rarely did stuff like that in the [courthouse] lockup." Urban testified that he went through the police reports with the defendant, who was not interested in the State's offer of 45 years. When asked whether the defendant ever mentioned that he wanted to enter into a plea deal, Urban responded:

> "A. I mean honestly I don't remember. But the fact we did a 402 Conference makes me believe I probably said to him let's get an offer from the Judge and see if we can do better than the 45. That was a terrible offer at least in our eyes it was.

Q. Why do you say that? Why was a 45-year offer made by the State not a good offer in the eyes of a defense attorney?

A. Well the minimum on that case is 31 years which is tough to get someone to plead to 31. So to go 14 years above the minimum, I didn't have any thought at all that [the defendant] was going to take the 45 and he indicated to me that he was not.

Q. You said the minimum was 31 years, minimum on an attempt murder with a firearm. Can you explain that?

A. 6 to 30 on the attempt murder. So a minimum of 6, 25 to life consecutive enhancement, 6 plus 25 you're starting at 31 and you're going up to life."

¶ 17    Urban testified that he explained the sentencing range for attempted murder with a firearm and that, while he could not specifically remember explaining the sentencing ranges for the defendant's other charges, it was his usual practice to do so. According to Urban, the charge of aggravated kidnapping would have had a range of 6 to 30 years.

¶ 18    Urban recalled explaining the purpose of a Rule 402 conference to the defendant, who agreed to proceed with the conference. At the conference, the State maintained its offer of 45 years, and the court proposed an offer of 40 years for attempted murder with a firearm. Urban testified that, although he again could not remember what he did in the defendant's particular case, after the conference he would have discussed the court's offer with the defendant on a later date at the jail, and likely more than once given the gravity of the charges and the potential sentences. Urban agreed that the defendant officially rejected the court's 40-year offer on the record on April 16, 2010.

¶ 19    When asked whether there were any other considerations that could have affected the defendant's sentence, Urban responded, "Yes. The agg[ravated] kidnapping is consecutive to the attempt murder," and he agreed that "there were other charges *** that would have also exercised the consecutive sentence," including the charge of aggravated vehicular hijacking. Urban also testified that he was "certain" that he would have discussed the sentencing range for attempted murder with firearm when reviewing the plea offers with the defendant, and that discussion would have included the concept of consecutive sentencing.

¶ 20    Urban recalled that the defendant was not interested in the court's 40-year offer: "I think that was rejected fairly -- that was only 5 years less than the State's offer so I don't think we spent a lot of time debating his desire to take the 40. Because if I remember correctly I think he made it clear that that did not interest him in any way."

¶ 21    The State concluded its questioning by asking about the defendant's motion to reconsider sentence. On that issue, Urban stated that he filed the motion to reconsider "[b]ecause [he] believed that the second 25-year consecutive [sentence for aggravated kidnapping] was illegal." The State then asked whether that was "based upon your knowledge of the law," to which Urban responded, "Yes."

¶ 22    On cross-examination, Urban was asked whether he would have corrected the court if it misstated the sentencing ranges for the charges against the defendant. He answered, "I would suspect either myself or the State would chime in and say, no, Judge, it's 31 or 10 or whatever it is" because "I know what the charge is, so I know what the minimums are." Defense counsel also asked Urban whether "there [were] issues about great bodily harm," to which Urban responded, "I don't know that that was really an issue."

¶ 23    In another series of answers, Urban also testified that he explained the concept of sentencing enhancements, while also stating again that the minimum sentence that the defendant was facing was 31 years:

"Q. You understood when you allegedly talked to [the defendant] about these sentencing enhancements about all 20 different counts you explained to him what had to be proven?

A. Yes.

Q. And you explained to him, 'If this was proven then this enhancement kicks in,' correct?

A. Yes.

Q. And then you explained to him that 'if the State proves this, this count and this count, they're not going to be concurrent. They're going to be consecutive sentences.'?

A. Yes. We talked about the chance of natural life in this case and a big number. But again I can't make him plead guilty to 40 years. All I can do is represent him as best I can. Did I like the offer? No. But it was his decision not [to] take the 40 and go to trial even though I told him you're not going to win this case. I'm good at this, but you're not going to win this case. He did not want to take the 40. Again, as a human I can't say that I blame him.

Q. You told him prior to trial that you're going to lose?

A. I told him that several times.

Q. And but you said today when you're testifying that the minimum was, I think you just said 14 years more than minimum?

A. That's what the offer was.

Q. So the minimum was 21?

A. 31. State's offer was 45. Judge's offer was 40. He wasn't taking that. He was 41 or 42 years old at the time. He wasn't taking 40 years. So his position was let's try it."

¶ 24    Urban also testified that the defendant "knew what the consecutive counts were, and he knew what he was looking [at] even only on the attempt murder." When questioned about his memory of those types of specific details, Urban stated, "I remember certain things about this case, but it was a long time ago. I know I saw him multiple times because of the serious nature of the case and the serious nature of the offer. He and I met on multiple occasions. He came back fit. I explained to him consecutive sentences 31 to life."

¶ 25    Following that testimony and arguments from counsel, the circuit court entered a written order denying the defendant's petition. Notably, the court found that Urban "repeatedly testified credibly that he talked with defendant about the charges, the potential sentences for each charge, the offers, and facts of the case." The court further observed:

"While Counsel Urban did not correct the court's admonition in January 2010, he subsequently and repeatedly talked about the possible sentences with defendant. Counsel Urban testified that he had such conversations with defendant after the court's offer at the 402 conference. So, defendant would have been armed with information regarding the correct sentencing structure after the court's error and well in advance of his decision to reject the court's offer and select a jury."

Additionally, the court credited Urban's experience and his testimony regarding his general practices in cases such as the defendant's:

"Based the difficulties in the case, Mr. Urban made efforts to explain the offer of 40 years in light of the potential sentencing scheme and the facts that likely would be brought out at the trial. Given the experience testified to by Counsel Urban and his testimony regarding the custom professional practices he exercised, and the testimony of his individual treatment of defendant, this court found Counsel Urban's testimony that he met with and explained the charges, sentences, and trial issues to defendant credible."

¶ 26   The court further observed that Urban was "clear" and "consistent" in his testimony regarding the defendant's sentencing exposure, noting that Urban "confirmed on direct examination and on cross-examination the terms of years each charge and the enhancements involved" and that Urban "was certain as to what the sentencing parameters were and that they were discussed with defendant." The court also found that Urban's candid acknowledgment that there were aspects of the case that he could not recall demonstrated his credibility. In sum, the court found that Urban "did properly advise Defendant as to the elements of each charge, the sentence defendant potentially faced as to each charge, the enhanced sentences possible for the charges, and the consecutive nature of the potential sentences."

¶ 27   Regarding the defendant's testimony, the court found it "self-serving, unreliable, and in the end unbelievable." In support, the court cited hearing transcripts purportedly refuting the defendant's allegation that he took no part in the Rule 402 conference as well as the absence of any statements from the defendant during pretrial proceedings asking to reopen the rejected plea offers or complaining about a lack of communication from Urban or a misunderstanding of the potential sentences. Additionally, the court noted that the defendant had not expressed any surprise

when he was admonished of the correct minimum sentence on the eve of trial and did not ask that the offers be reopened, evidencing that he had previously been properly advised by Urban.

¶ 28 The court further found that the defendant's testimony that he would have taken either of the plea offers if he had been properly advised of the minimum sentence faced to have not been credible. The court cited the defendant's statements that "I was trying to see what was going to happen and what's what," "I was trying to see what he was going to do," and "I didn't like the figure" as evidence that the defendant was not interested in accepting either of the available plea offers and instead wanted to see if he could get improved terms. The court also found that, after the defendant was properly admonished of the potential sentencing range before trial, there was no evidence that the State would have kept its offer open or that the court would have accepted a plea deal at that time. For all of those reasons, the court found that the defendant had not demonstrated deficient performance on the part of Urban or prejudice from the alleged deficiency. This appeal follows.

¶ 29 The Act provides a three-stage process for challenging a conviction based on an alleged deprivation of a defendant's constitutional rights. *People v. Carr*, 2020 IL App (1st) 171484, ¶ 24. At the third stage, the circuit court " 'hears evidence and determines whether, based on that evidence, the defendant is entitled to relief.' " *Id.* (quoting *People v. Garcia*, 2015 IL App (1st) 131180, ¶ 47). "The defendant bears the burden of making a substantial showing of a constitutional violation." *Id.* (citing *People v. Pendleton*, 223 Ill. 458, 473 (2006)). When a postconviction petition has been denied following a third-stage evidentiary hearing, we review the circuit court's "fact-finding and credibility determinations under the manifestly-erroneous standard." *People v.*

*Carballido*, 2015 IL App (2d) 140760, ¶ 65 (citing *Pendleton*, 223 Ill. at 473). "Manifest error is clearly evident, plain, and indisputable." *Id.* (citing *People v. Beaman*, 229 Ill. 2d 56, 73 (2008)).

¶ 30    A defendant has a sixth amendment right to the effective assistance of counsel during plea negotiations. *People v. Hale*, 2013 IL 113140, ¶ 16 (citing *People v. Curry,* 178 Ill. 2d 509, 528 (1997)). "This right to effective assistance of counsel extends to the decision to reject a plea offer, even if the defendant subsequently receives a fair trial." *Id.* (citing *Curry*, 178 Ill. 2d at 518). A claim of ineffective assistance of counsel at the plea-bargaining stage is governed by the two-part test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984). *Hale*, 2013 IL 113140, ¶ 16 (citing *Missouri v. Frye*, 566 U.S. 134, 140 (2012)). That is, a defendant must show both deficient performance on the part of counsel and resulting prejudice. *Id.* In the plea-bargaining context, counsel performs deficiently if he fails to reasonably inform the defendant of "the direct consequences of accepting or rejecting a plea offer," which includes "the maximum and minimum sentences that can be imposed for the offenses with which the defendant is charged." *Curry*, 178 Ill. 2d at 528. To establish prejudice, a defendant must prove that, "absent his attorney's deficient advice, he would have accepted the plea offer." *Hale*, 2013 IL 113140, ¶ 16 (citing *Curry*, 178 Ill. 2d at 531). "This showing of prejudice must encompass more than a defendant's own 'subjective, self-serving' testimony." *Id.* (quoting *Curry*, 178 Ill. 2d at 531). "Rather, there must be 'independent, objective confirmation that defendant's rejection of the proffered plea was based upon counsel's erroneous advice,' and not on other considerations." *Id.* (quoting *Curry*, 178 Ill. 2d at 532). "The disparity between the sentence a defendant faced and a significantly shorter plea offer can be considered supportive of a defendant's claim of prejudice." *Id.* Additionally, the defendant must "demonstrate a reasonable probability that the plea would have been entered

without the prosecution canceling it or the trial court refusing to accept it." *Id.* (quoting *Frye*, 566 U.S. at 147).

¶ 31    The defendant argues in this appeal that his testimony established that the trial court incorrectly admonished him as to the minimum sentence faced; that Urban did not correct the court's misstatement; that he rejected the State's and the trial court's plea offers in reliance on his misunderstanding of the minimum sentence; and that he would have accepted the court's offer if he had been correctly informed of his sentencing exposure. He also contends that the circuit court's decision to credit Urban's contrary testimony was manifestly erroneous because Urban's statement that the minimum sentence was 31 years rendered Urban's testimony unreliable, demonstrated that Urban did not understand the applicable sentencing structure, and further supported his claim of deficient performance. The defendant also argues that Urban misrepresented the events surrounding the motion to reconsider sentence, further diminishing Urban's credibility. Because Urban's testimony was largely consistent, demonstrated an understating of the sentencing issues in the case, and refuted the defendant's allegations, we do not believe that the circuit court's ruling was manifestly erroneous.

¶ 32    As a starting point, we note that the defendant is correct that the trial court misinformed him of the minimum sentence faced when it stated on April 29, 2009, that the minimum possible sentence for both attempted first-degree murder with a firearm and aggravated kidnapping with a firearm was "21 years in the Illinois Department of Corrections, and if they were served consecutively then the minimum sentence would be 42 years." Rather, the minimum sentence for each of those offenses was 31 years' imprisonment, as they were both Class X felonies with a six-year minimum sentence (see 730 ILCS 5/5-8-1(a)(3) (West 2008)) and the defendant's use of a

firearm causing great bodily harm required an enhancement of at least 25 years for both offenses. See 720 ILCS 5/8-4(c)(1)(D) (West 2008) (making "an attempt to commit first degree murder during which the person personally discharged a firearm that proximately caused great bodily harm" a Class X felony with a minimum 25-year enhancement); 720 ILCS 5/10-2(a)(8), (b) (West 2008) (making it a Class X felony to discharge a firearm and cause great bodily harm during a kidnapping and requiring the imposition of a minimum 25-year enhancement for that offense). And if the State proved that the defendant inflicted severe bodily injury, then the court would have been required to impose those two sentences consecutively, making the overall minimum sentence 62 years. See 720 ILCS 5/5-8-4(a)(i) (West 2008) ("The court shall impose consecutive sentences if: (i) one of the offenses for which defendant was convicted was *** a Class X *** felony and the defendant inflicted severe bodily injury").

¶ 33    It follows, therefore, that Urban had a duty to correct the court's misstatement and inform the defendant of the actual minimum potential sentence in order for the defendant to make a knowing and informed decision when evaluating the court's plea offer. See *Curry*, 178 Ill. 2d at 528. The defendant testified that Urban did not do so and that Urban never explained the potential sentencing range. However, Urban testified that he did.

¶ 34    In particular, Urban first testified that, at the outset of his representation, he explained the potential sentencing range for the attempted murder charge and that, while he could not specifically remember explaining the sentencing ranges for the defendant's other charges, it was his usual practice to do so. He then testified that, when reviewing the plea offers with the defendant, he was "certain" that he would have discussed the sentencing range for attempt murder with firearm, and he added that such a discussion would have included the concept of consecutive sentencing.

¶ 35    Urban further demonstrated that he understood the potential for consecutive sentences when he testified that "[t]he agg[ravated] kidnapping is consecutive to the attempt murder"; when he agreed that "there were other charges *** that would have also exercised the consecutive sentence," including the charge of aggravated vehicular hijacking; and when, upon being asked whether he had explained to the defendant that, "if the State proves this, this count and this count, they're not going to be concurrent. They're going to be consecutive sentences," he answered "Yes" and added that "[w]e talked about the chance of natural life in this case and a big number." Additionally, Urban testified that he had "explained to [the defendant] consecutive sentences 31 to life" and that the defendant "knew what the consecutive counts were, and he knew what he was looking even only on the attempt murder."

¶ 36    Thus, Urban's testimony demonstrated that he reviewed the sentencing ranges with the defendant both at the outset of the case and while evaluating plea offers, that he understood the sentencing issues in the defendant's case, and that he explained to the defendant that the sentences could be imposed consecutively. Urban's testimony, therefore, refuted the defendant's allegations of deficient performance.

¶ 37    Although the circuit court found that Urban's testimony credibly established that he had fulfilled his duty of informing the defendant of the consequences bearing on his decision to accept the court's plea offer, the defendant argues that the court should not have credited Urban's testimony because Urban testified that the minimum sentence was 31 years and because Urban allegedly misrepresented the circumstances leading to the trial court's decision to grant his motion to reconsider sentence. While it is true that Urban stated twice during his testimony that there was a 31-year minimum sentence, the first such statement was made in the context of discussing the

State's offer of 45 years in exchange for a guilty plea to attempted murder, and Urban appears to have been stating that the minimum on that charge was 31 years, which was correct. The second mention of a 31-year minimum was in response to a question referring back to Urban's previous mention of the 31-year minimum and the State's offer being "14 years more than minimum." Again, this appear to have been a reference to the minimum for the offense at issue in the plea offer, rather than a statement that the overall minimum sentence for the defendant's 20 charges collectively was 31 years. This conclusion is reinforced by Urban's other testimony demonstrating that he knew that the aggravated kidnapping and aggravated vehicular hijacking sentences would be consecutive to the attempted murder sentence and that he had explained to the defendant the potential for consecutive sentences. When we view Urban's testimony as a whole, we agree with the circuit court that he was largely consistent and demonstrated an understanding of the sentencing structure at play. We do not believe that his mentions of a 31-year minimum for attempted murder "indisputabl[y]" made his other answers incredible, as is required to establish that the court's credibility finding was manifestly erroneous. See *Carballido*, 2015 IL App (2d) 140760, ¶ 65 ("Manifest error is clearly evident, plain, and indisputable." (citing *Beaman*, 229 Ill. 2d at 73)).

¶ 38    The defendant also contends that Urban's credibility was diminished by his testimony that he had filed a motion to reconsider sentence "[b]ecause [he] believed that the second 25-year consecutive [sentence for aggravated kidnapping] was illegal." The defendant argues that this statement was "untruthful" because the trial court granted the motion on grounds that it apparently observed *sua sponte*, rather than the grounds raised in Urban's motion. According to the defendant, in his testimony Urban inappropriately and incorrectly took credit for the reduction in the

defendant's sentence. However, we do not share the defendant's view of this issue. During the evidentiary hearing, Urban was asked why he filed the motion to reconsider, and he replied with the above response that he did so because he believed that the sentence was illegal. He was then asked whether that was based on his knowledge of the law, and responded, "Yes." But that was the extent of the testimony. He never discussed the court's grounds for granting the motion or intimated that they were the same grounds that he had raised in the motion, and his statement regarding his reason for filing the motion was not contrary to the record in any way. Therefore, the defendant's argument that Urban's testimony on this issue somehow diminished his credibility is without merit.

¶ 39    For the foregoing reasons, we conclude that the defendant has failed to establish that the circuit court's ruling finding Urban credible and finding that Urban's testimony had refuted the defendant's claim were manifestly erroneous. Urban demonstrated requisite knowledge of the sentencing structure at issue, and his testimony was generally consistent and not contrary to the record in any notable way. Accordingly, we cannot say that the court manifestly erred in crediting Urban's testimony and in denying the defendant's motion.

¶ 40    Affirmed.